The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 12, 2020

## 2020COA158

**No. 14CA2083, *People v. Session* — Criminal Law — Sentencing — Punishment for Habitual Criminals; Constitutional Law — Eighth Amendment — Cruel and Unusual Punishments — Proportionality Review**

This case is before the court of appeals for a second time. The first time this case was before the court of appeals, a division affirmed defendant's conviction and habitual sentence for possession of a controlled substance. Following that decision, the supreme court granted defendant's petition for writ of certiorari, vacated the court of appeals' judgment, and remanded the case to the court of appeals for the division to reconsider its decision in light of *Melton v. People*, 2019 CO 89, *Wells-Yates v. People*, 2019 CO 90M, and *People v. McRae*, 2019 CO 91.

Upon this reconsideration, the division affirms defendant's judgment of conviction, rejecting defendant's contention that his

Sixth Amendment right to counsel were violated when the trial court denied his request to substitute appointed counsel. The division also rejects defendant's contention that he was entitled have a jury, rather than a judge, adjudicate the habitual criminal counts.

With respect to defendant's challenge to his habitual sentence, however, the division concludes that, under the standard articulated in *Wells-Yates,* second degree burglary and attempted burglary — two of defendant's predicate offenses — are no longer per se grave and serious crimes. The division further concludes that, because none the defendant's predicate offenses — nor his triggering offense — are per se grave and serious, a proportionality review is required before a habitual sentence is imposed. And because of the fact-specific nature of that review, the division remands the case to the trial court for further proceedings.

Court of Appeals No. 14CA2083
City and County of Denver District Court No. 12CR2805
Honorable J. Eric Elliff, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Franky Lamont Session,

Defendant-Appellant.

JUDGMENT AFFIRMED, SENTENCE VACATED,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE WELLING
Dailey and Hawthorne*, JJ., concur

Announced November 12, 2020

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Karen Mahlman Gerash,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1 Defendant, Franky Lamont Session, was convicted of possession of more than four grams of a schedule II controlled substance and sentenced to twenty-four years in prison after the trial court adjudicated him a habitual offender.

¶ 2 On September 14, 2017, we issued our original opinion in this case and affirmed both the judgment of conviction and sentence. *See People v. Session*, slip op. at ¶ 38 (Colo. App. No. 14CA2083, Sept. 14, 2017) (not published pursuant to C.A.R. 35(e)). In that opinion, we concluded that the trial court didn't err by imposing a habitual sentence without undertaking a proportionality review. Our conclusion in this regard rested on the premise that even assuming Session's four drug possession convictions — which were his triggering offense and three of his predicate offenses — aren't per se grave and serious, because two of his predicate convictions — second degree burglary and attempted second degree burglary — were per se grave and serious, a proportionality review wasn't required. *Id.* at ¶¶ 4–17.

¶ 3 On February 10, 2020, the supreme court granted Session's petition for writ of certiorari, vacated our judgment, and remanded the case to us for reconsideration in light of *Melton v. People*, 2019

1

CO 89, *Wells-Yates v. People*, 2019 CO 90M, and *People v. McRae*, 2019 CO 91. *See Session v. People*, (Colo. No. 17SC749, Feb. 10, 2020) (unpublished order). In *Wells-Yates* the supreme court made explicit what we had assumed — that drug offenses such as Session's three predicate offenses and his triggering offense are no longer per se grave and serious. In addition to that, the supreme court reopened the issue of whether, under its newly articulated standard for determining whether an offense is per se grave and serious, second degree burglary or attempted burglary is per se grave and serious.

¶ 4    On reconsideration, we affirm Session's judgment of conviction for the same reasons we did before. We conclude, however, that, under the standard articulated in *Wells-Yates*, second degree burglary and attempted burglary are no longer per se grave and serious crimes. We further conclude that, because none of Session's predicate offenses — or his triggering offense — are per se grave and serious, a proportionality review is required before a habitual sentence can be imposed. And because of the fact-specific nature of that review, we vacate Session's sentence and remand the case to the trial court for further proceedings.

## I.    Background

¶ 5    In June 2012, Session appeared at the Saint Joseph Hospital emergency room with gunshot wounds.  When hospital personnel cut away Session's clothing to assess his injuries, a sandwich bag containing cocaine fell from his underwear.  Police later arrived and took possession of the bag.

¶ 6    In July 2012, Session was charged with possession of a controlled substance with intent to distribute (a class 3 felony) and possession of more than four grams of a schedule II controlled substance (a class 4 felony).  The prosecution later amended the charges to include five habitual criminal counts.

¶ 7    The case went to trial in June 2014.  The jury acquitted Session of the possession with intent to distribute charge, but convicted him of the class 4 felony of possession of more than four grams of a schedule II controlled substance.  The trial court adjudicated Session a habitual criminal based on the possession conviction and five previous felony convictions.  The trial court denied Session's request for an extended proportionality review of his sentence.  Session was sentenced to twenty-four years in the custody of the Department of Corrections.

## II.    Analysis

¶ 8    Session raises three issues on appeal.  First, he contends that his Sixth Amendment right to counsel was violated because the trial court denied his request to substitute appointed counsel without adequate inquiry.  Second, he contends that his Sixth Amendment right to a jury trial was violated because a judge, rather than a jury, adjudicated the habitual criminal counts.  Third, he contends that the trial court erred by imposing a habitual sentence without conducting a proportionality review.  We address each contention, in turn, below.[1]

### A.    Substitution of Appointed Counsel

¶ 9    Session contends that the trial court violated his Sixth Amendment right to counsel because it denied his request to substitute appointed counsel without conducting an adequate inquiry.  We disagree.

---

[1] Because our original opinion was unpublished and our judgment was vacated, we choose to re-address all of the issues Session raised in his original direct appeal here without reference to our earlier opinion.

### 1. Additional Factual Background

¶ 10    Session made three requests to substitute counsel.[2] He first moved for substitution of counsel during a pretrial conference on November 21, 2013. At a hearing without the prosecutor present, Session alleged that his counsel had: refused to investigate and subpoena information and witnesses, failed to provide mitigating evidence to the prosecution, and failed to adequately communicate. Defense counsel told the court that the evidence at issue had been provided to the prosecution, although it had not affected the plea offer. He also assured the court that he had an investigator spending "quite a bit" of time on the cases. The trial court found that there was no conflict, and that Session's disagreements with counsel related to strategic decisions. The trial court denied Session's motion to substitute counsel. Session declined to proceed pro se.

---

[2] In addition to this case, Session was also charged with and awaiting trial for distribution and possession with intent to distribute (case number 12CR418) and pimping (case number 12CR4569). Because these trials were also pending, certain pretrial matters were heard jointly.

¶ 11    Twelve days before trial, on June 12, 2014, Session again alleged a conflict with his counsel based on particular evidentiary details of the case and requested to proceed pro se. Session prepared motions, and the court accepted them, informing Session that it would review the information and hold a hearing if necessary. The trial court made no further findings on the issue.

¶ 12    The morning of trial, Session informed the trial court that he wanted to proceed pro se or have substitute counsel appointed.[3] Session provided the court with more pleadings, including witness subpoenas. Session voiced concerns about whether his counsel had investigated certain witnesses and issues. Defense counsel assured the court he had investigated the issues and was prepared for trial. The trial court denied Session's request, observing that the disagreement related to trial strategy, it represented a continuation of the disagreement previously heard, a fourth continuance of trial wasn't feasible, and the request appeared to be a delay tactic.

---

[3] Session doesn't argue on appeal that he was denied the right to represent himself at trial. Accordingly, that issue isn't before us.

## 2. Legal Principles

¶ 13    We review a trial court's decision to deny substitute counsel for an abuse of discretion. *People v. Weeks*, 2015 COA 77, ¶ 101.

¶ 14    An indigent criminal defendant has a constitutional right to counsel, but he or she doesn't have the right to demand a particular attorney. *People v. Arguello*, 772 P.2d 87, 92 (Colo. 1989); *see* U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16. Thus, a court isn't required to substitute counsel unless a defendant establishes "good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *Arguello*, 772 P.2d at 94 (citation omitted).

¶ 15    To determine whether a district court erred by denying a defendant's request for substitution of counsel, we consider four factors: (1) the timeliness of the defendant's motion; (2) the adequacy of the court's inquiry; (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication or otherwise prevented an adequate defense; and (4) whether the defendant substantially and unreasonably

7

contributed to the conflict with his attorney. *People v. Bergerud*, 223 P.3d 686, 695 (Colo. 2010).

### 3.    Discussion

¶ 16    Our review of the four factors described in *Bergerud* reveals adequate support for the trial court's denial of Session's motion for substitution of counsel. Although better practice may have been for the court to conduct further inquiry into each of Session's separate complaints and to make additional findings in support of its decision, we conclude the court didn't abuse its discretion.

¶ 17    First, Session's second and third motions were late. In his second request, Session asked the court to appoint a new attorney just twelve days before trial in a serious felony case. Session's third request was made the same day as his trial was set to begin. To accommodate either request, the court would have had to continue the trial for a fourth time. Although the interest in judicial efficiency doesn't override a defendant's right to counsel, it is a relevant consideration in determining whether to allow substitution of counsel. *See Arguello*, 772 P.2d at 94.

¶ 18    Second, under the circumstances, the court wasn't required to conduct further inquiry into Session's second and third requests.

Generally, upon receiving a motion to substitute counsel, a court must conduct a hearing or inquire into the reasons for the defendant's request. *See Bergerud*, 223 P.3d at 694. But when a defendant's written motion describes his complaints in sufficient detail, the court need not inquire further. *See id.*; *see also People v. Arko*, 159 P.3d 713, 719 (Colo. App. 2006), *rev'd on other grounds*, 183 P.3d 555 (Colo. 2008). Here, the trial court was able to evaluate the nature of Session's dispute with his counsel on the basis of Session's written motions and Session's statements during the November 21, 2013, hearing.

¶ 19    Third, with respect to whether the conflict prevented the preparation of an adequate defense, we agree with the trial court's determination that Session failed to demonstrate that defense counsel's performance had been detrimental to Session's defense. The conflict, according to Session, arose largely from defense counsel's alleged failure to investigate certain evidence and witnesses and his alleged failure to make certain evidence available to the prosecution. But the record indicates that counsel made reasonable efforts to investigate the evidence and witnesses complained of. The record further indicates that counsel provided

9

the complained-of evidence to the prosecution, but hadn't made Session aware that he had done so. Session later described this as a "miscommunication."

¶ 20     Fourth, the record is unclear whether Session contributed to any conflict with defense counsel, but our analysis of the other three factors reveals adequate support for the trial court's decision. Because the decision finds support in the record, we conclude the court didn't abuse its discretion when it denied Session's motions for substitution of counsel.

¶ 21     Accordingly, we discern no error.

### B.     Habitual Criminal Adjudication

¶ 22     Session contends that he was entitled to a jury trial for his habitual criminal adjudication. We disagree.

¶ 23     Although this issue wasn't preserved, we exercise our discretion to review an unpreserved constitutional challenge for the first time on appeal. *People v. Wiedemer*, 852 P.2d 424, 433 n.9 (Colo. 1993). We review for plain error. *Hagos v. People,* 2012 CO 63, ¶ 14.

## 1. Legal Principles

¶ 24 In habitual criminal proceedings, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant has been previously convicted as alleged. *People v. Nunn*, 148 P.3d 222, 225-28 (Colo. App. 2006). Generally, any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. 296, 303 (2004); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). "Although there is some doubt about the continued vitality of the prior conviction exception," *Lopez v. People*, 113 P.3d 713, 723 (Colo. 2005), the United States Supreme Court and the Colorado Supreme Court have repeatedly affirmed the exception, *see United States v. Booker*, 543 U.S. 220, 244 (2005); *Blakely*, 542 U.S. at 301; *People v. Huber*, 139 P.3d 628, 631 (Colo. 2006); *Lopez*, 113 P.3d at 723.

¶ 25 *Apprendi*'s prior conviction exception extends to the additional statutory factual findings for each prior conviction necessary to support a habitual criminal sentence, including: (1) that each prior conviction was separately brought and tried; (2) that they arose out

of separate and distinct criminal episodes; and (3) that the accused was the person named in each prior conviction. *Nunn,* 148 P.3d at 226-28; *see Lopez,* 113 P.3d at 726; *People v. Benzor,* 100 P.3d 542, 545 (Colo. App. 2004).

## 2. Discussion

¶ 26     We are unpersuaded that Session's constitutional rights were violated. Session doesn't allege any flaws in the proceedings resulting in his prior convictions. The trial court properly made findings of fact regarding the prior convictions pursuant to the habitual criminal statute and, in light of *Lopez, Blakely,* and *Apprendi,* didn't violate Session's Sixth Amendment right under the United States Constitution or Session's rights under article II, section 16 of the Colorado Constitution in doing so.

¶ 27     We are also unpersuaded by Session's contention that *Alleyne v. United States,* 570 U.S. 99 (2013), did away with the prior conviction exception under the Sixth Amendment. The Supreme Court in *Alleyne* overruled *Harris v. United States,* 536 U.S. 545 (2002), but *Harris* didn't involve *Apprendi*'s prior conviction exception. *See generally Harris,* 536 U.S. at 549. Similarly, the Court's analysis in *Alleyne* and its discussion of *Apprendi* didn't

12

alter *Apprendi*'s prior conviction exception to its general holding regarding the Sixth Amendment. *See Alleyne*, 570 U.S. at 108-09. The prior conviction exception from *Apprendi* and *Blakely* therefore remains supported. Because the habitual criminal statute is constitutional under the prior conviction exception, there was a sufficient basis for the trial court, instead of a jury, to make findings of fact regarding Session's habitual criminal charges. We, therefore, reject Session's constitutional claim.

### C. Proportionality of Session's Sentence

¶ 28 Session contends that the trial court erred by imposing a twenty-four-year sentence — triggered by his possession conviction and five previous felony convictions — without conducting a proportionality review. We agree and remand for a proportionality review.

### 1. Additional Facts

¶ 29 Session's habitual criminal sentence was triggered by his class 4 felony conviction for possession of more than four grams of a schedule II controlled substance in violation of section 18-18-403.5(2)(a)(II), C.R.S. 2012. By the time of Session's sentencing,

that offense had been reclassified as a level 4 drug felony. § 18-18-403.5(2)(a), C.R.S. 2019.

¶ 30    Session's five prior felony convictions are, as follows:

- an April 6, 2004, conviction for possession of a schedule IV controlled substance (a class 5 felony at the time of conviction; a level 1 drug misdemeanor now and at the time of sentencing in this case);

- a May 19, 2004, conviction for conspiracy to possess a schedule II controlled substance (a class 4 felony at the time of conviction; a level 4 drug felony now and at the time of sentencing in this case);

- a March 9, 2004, conviction for conspiracy to possess a schedule II controlled substance (class 4 felony at the time of conviction; a level 4 drug felony now and at the time of sentencing in this case);

- a January 26, 1995, conviction for second degree burglary (a class 4 felony then, at the time of sentencing, and now); and

- a June 15, 1993, conviction for attempted second degree burglary (a class 5 felony then, at the time of sentencing, and now).

### 2.     Applicable Law

¶ 31    The Eighth Amendment and article II, section 20 of the Colorado Constitution prohibit cruel and unusual punishments. *Wells-Yates*, ¶¶ 5, 10.  Those provisions require a sentence to be proportionate to the crime.  *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Alvarez v. People*, 797 P.2d 37, 38 (Colo. 1990), *abrogated on other grounds by Melton*, ¶ 18.  We review proportionality determinations de novo.  *Wells-Yates*, ¶ 35.

¶ 32    To ensure sentences aren't disproportionate, a criminal defendant convicted of being a habitual criminal is "entitled, upon request, to a proportionality review of his sentence."  *People v. Deroulet*, 48 P.3d 520, 522 (Colo. 2002), *abrogated on other grounds by Wells-Yates*, ¶¶ 63-65.  The initial proportionality review, called an abbreviated review, considers the gravity or seriousness of the offenses and the harshness of the penalty.  *Wells-Yates*, ¶ 11.

¶ 33    Generally, the gravity or seriousness of the offense requires a consideration of the harm caused or threatened to the victim or

15

society and the culpability of the offender. Factors pertinent to the harm to the victim or society include the absolute magnitude of the crime, whether the crime is a lesser included offense or the greater inclusive offense, whether the crime involves a completed act or an attempt to commit an act, and whether the defendant was a principal or an accessory after the fact in the criminal episode. *Id.* at ¶ 12. As it relates to the defendant's culpability, motive is relevant, as is whether the defendant's acts were negligent, reckless, knowing, intentional, or malicious. *Id.*

¶ 34      However, if a crime is considered per se grave or serious, "a trial court may skip the first subpart of step one — the determination regarding the gravity or seriousness of the crimes — and 'proceed directly to the second subpart' of that step — the assessment related to the harshness of the penalty." *Id.* at ¶ 13 (quoting *Close v. People*, 48 P.3d 528, 538 (Colo. 2002), *abrogated on other grounds by Wells-Yates*) (citing *Deroulet*, 48 P.3d at 524)). A per se grave and serious crime is one that has been declared inherently grave or serious, such as aggravated robbery or accessory to first degree murder. *Id.* (first citing *Deroulet*, 48 P.3d at 524; then citing *Close*, 48 P.3d at 538).

¶ 35    *Wells-Yates*, ¶ 63, sets forth a new standard by which courts determine whether an offense is per se grave or serious:

> [T]he designation of per se grave or serious for purposes of a proportionality review must be reserved for those rare crimes which, based on their statutory elements, necessarily involve grave or serious conduct.  Put differently, a crime should not be designated per se grave or serious unless the court concludes that the crime would be grave or serious in every potential factual scenario.  Using the designation otherwise is fraught with peril.

¶ 36    For those crimes that aren't per se grave or serious, courts should consider the facts and circumstances underlying both the defendant's triggering and predicate offenses.  *Id.* at ¶¶ 37-39.  Subsequent legislative amendments reducing the penalties for certain offenses are also relevant considerations when assessing whether the offenses are grave or serious.  *Id.* at ¶¶ 40-53.

¶ 37    The harshness of the penalty includes a consideration of the length of the sentence as well as parole eligibility.  *Id.* at ¶ 14.

¶ 38    Taking these factors into consideration, during an abbreviated proportionality review of a habitual criminal sentence, the court must consider each triggering offense and the predicate offenses together and determine whether, in combination, they are so

17

lacking in gravity or seriousness as to raise an inference that the sentence imposed on that triggering offense is grossly disproportionate. If that inference exists, an extended proportionality review must be undertaken. If not, the sentence is proportionate. *Id.* at ¶ 76.

¶ 39    Certain drug offenses, such as simple possession and use of a controlled substance and possession with intent to distribute, are no longer considered per se grave or serious offenses. *Id.* at ¶¶ 68-73. And, it is an open question whether second degree burglary and attempted second degree burglary are per se grave or serious offenses. *Id.* at ¶ 65 nn.17 & 18; *see also People v. Tran*, 2020 COA 99, ¶¶ 94, 98-101 (acknowledging that in *Well-Yates* "the supreme court declined to decide whether second degree burglary is still a per se grave and serious offense," but concluding that "on remand, the trial court should not treat [the defendant]'s second degree burglary convictions as per se grave and serious" and should instead "analyze the facts of each offense to determine whether it is grave and serious").

### 3. Application

¶ 40    We first address whether, in light of *Wells-Yates*, any of Session's triggering or predicate offenses are per se grave and serious. Because we conclude that none of his offenses are per se grave and serious, we remand the case to the trial court to conduct a proportionality review with instructions to analyze the facts and circumstances surrounding each offense.

### a. Drug Offenses

¶ 41    Session's habitual criminal sentence was triggered by his class 4 felony conviction for possession of more than four grams of a schedule II controlled substance. § 18-18-403.5(2)(a)(II), C.R.S. 2012; § 18-18-403.5(2)(a), C.R.S. 2019. By the time he was sentenced in 2014, this offense had been reclassified as a level 4 drug felony. Three of Session's prior felony convictions were also for drug offenses that, by the time of his sentencing, had been reclassified as lower level offenses.

¶ 42    Before *Wells-Yates*, all drug-related crimes were, at least arguably, per se grave and serious offenses. *Deroulet*, 48 P.3d at 524; *see also Wells-Yates*, ¶ 13. *But see* Ch. 333, 2013 Colo. Sess. Laws 1900-44 (reclassifying drug offenses in Colorado, reducing

sentences for those offenses, and calling into question whether drug offenses were still per se grave and serious offenses). However, in *Wells-Yates* the supreme court held that "drug offenses of possession and possession with intent should no longer be considered per se grave or serious." *Wells-Yates*, ¶ 66. Instead, a court's determination of whether a drug possession offense is grave or serious must be an individualized determination that turns "on the facts and circumstances surrounding the specific crime committed — i.e., [it should be] based on consideration of the harm caused or threatened to the victim or society and the offender's culpability." *Id.* at ¶ 69.

¶ 43 Thus, Session's triggering offense and his three felony drug possession convictions are conclusively no longer per se grave and serious.

b. Second Degree Burglary and Attempted Second Degree Burglary

¶ 44 Previously, the supreme court had held that both second degree burglary and attempted second degree burglary were per se grave and serious crimes. Deroulet, 48 P.3d at 524 (holding that burglary is per se grave or serious); Close, 48 P.3d at 536 (holding

20

that attempted burglary is per se grave or serious). In Wells-Yates, ¶ 65, the supreme court said that crimes it had previously considered per se grave and serious like "[a]ggravated robbery, burglary, accessory to first degree murder, and the sale or distribution of narcotics . . . satisfy the standard [it] announce[d]." *Id.* (footnote omitted). But, in a pair of footnotes, the court called into question whether "the designation of burglary as a per se grave or serious crime extends to third degree burglary . . . or even second degree burglary . . . ." *Id.* at ¶ 65 nn.17 & 18 (noting that it "need not, and therefore d[id] not, decide whether [attempted burglary] should be considered per se grave or serious"). Because the issue of whether second degree burglary remains a per se grave or serious offense wasn't before the court in *Wells-Yates*, it declined to resolve it. *Id.*; *see also Tran*, ¶¶ 94, 98-101 (acknowledging that *Wells-Yates* left open the issue of whether second degree burglary was per se grave and serious).

¶ 45    The supreme court did, however, lay out a roadmap for determining whether a crime should be designated as per se grave and serious. *Wells-Yates*, ¶¶ 62-63. First, the supreme court admonished that we should be cautious when designating a crime

21

per se grave and serious. *Id.* at ¶ 62. Second, our concern when designating a crime per se grave and serious should be "magnified in the habitual criminal context, where every sentence under review has been imposed without the trial court's exercise of discretion." *Id.* And, third, we shouldn't designate a crime per se grave and serious "unless [we] conclude[] that the crime would be grave or serious in *every potential factual scenario*." *Wells-Yates*, ¶ 63 (emphasis added).

¶ 46    Applying these principles, we conclude that second degree burglary and attempted second degree burglary aren't per se grave and serious offenses in the wake of *Wells-Yates*. This is because they aren't crimes that are grave or serious in every factual scenario.

¶ 47    To be sure, first degree burglary is per se grave and serious because it is grave and serious in every permutation. *Id.* at ¶ 65. First degree burglary is committed when a person unlawfully enters a "building or occupied structure" with the intent to commit a crime therein against another person or property and, while doing so, "the person or another participant in the crime assaults or menaces any person, the person or another participant is armed with explosives,

22

or the person or another participant uses a deadly weapon or possesses and threatens the use of a deadly weapon." § 18-4-202(1), C.R.S. 2019. Simply by satisfying the elements of first degree burglary, the offender has placed others in grave danger.

¶ 48     In contrast, "[a] person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18-4-203, C.R.S. 2019. While this crime can, in some cases, be grave or serious, it isn't always. For example, one can commit second degree burglary by entering an unoccupied garage and stealing a bicycle. One could also commit second degree burglary by entering an abandoned building to steal copper wiring. Neither of these versions of second degree burglary are likely to be grave or serious. But, one can also commit second degree burglary by entering an occupied garage or home and stealing the owner's personal effects, risking a dangerous confrontation. That would be grave and serious.

¶ 49    Thus, applying *Wells-Yates* we conclude that second degree

burglary (and attempted second degree burglary) are no longer per

se grave and serious crimes.[4]

c.    Proportionality Review

¶ 50    Not having the benefit of *Wells-Yates*, *McRae*, or *Melton*, the

trial court — and this division in our earlier opinion — concluded

that Session's sentence was proportionate under the then-governing

law.  However, after *Wells-Yates*, none of Session's prior convictions

---

[4] *Wells-Yates v. People*, 2019 CO 90M, partially abrogated *People v. Deroulet*, 48 P.3d 520 (Colo. 2002), and *Close v. People*, 48 P.3d 528 (Colo. 2002).  *Deroulet* held that burglary offenses, including second degree burglary, were per se grave and serious crimes.  48 P.3d at 524.  And *Close* held that attempted burglary offenses, including attempted second degree burglary, were also per se grave and serious crimes.  48 P.3d at 536.  The supreme court in *Wells-Yates* explicitly didn't resolve whether second degree burglary or attempted second degree burglary are still per se grave and serious crimes.  However, it did set a new standard for which offenses constitute per se grave and serious crimes.  In doing so, it cited to *Deroulet* and *Close* in a footnote, calling into question whether, under this new standard, second degree burglary or attempted second degree burglary would still be per se grave and serious crimes.  *Wells-Yates*, ¶ 65 nn.17 & 18.  By explicitly declining to resolve the per se grave and serious status of second degree burglary and attempted second degree burglary, *Wells-Yates* partially abrogates both earlier opinions such that lower courts are no longer bound by *Deroulet*'s and *Close*'s holdings on those issues when determining whether second degree burglary or attempted second degree burglary are per se grave and serious crimes.

— for drug possession, second degree burglary, and attempted second degree burglary — are per se grave and serious.. We recognize that in conducting a proportionality review of Session's sentence, it it now necessary for a court to consider and weigh the following:

- Session's April 6, 2004, conviction for possession of a schedule IV controlled substance was a class 5 felony punishable by one to three years in prison plus two years of mandatory parole. §§ 18-1.3-401(V)(A), 18-18-405(2)(a)(III)(A), C.R.S. 2004. He was sentenced to two years in prison. In 2013, the offense was reclassified. Ch. 333, sec. 10, § 18-18-405, 2013 Colo. Sess. Laws 1909-13.

- Session's May 19, 2004, conviction for conspiracy to possess a schedule II controlled substance was a class 4 felony punishable by two to six years in prison, plus three years of mandatory parole. §§ 18-1.3-401(V)(A), 18-18-405(2)(a), C.R.S. 2004. He was sentenced to six years in prison. After October 2013, the offense would have been a level 4 drug felony punishable by six months to

one year in prison, plus one year of mandatory parole. §§ 18-1.3-401.5(2)(a), 18-18-405(2)(d), C.R.S. 2019.

- Session's March 9, 2004, conviction for conspiracy to possess a schedule II controlled substance was a class 4 felony punishable by two to six years in prison, plus three years of mandatory parole. §§ 18-1.3-401(1)(a)(V)(A), 18-18-405(2)(a), C.R.S. 2004. He was sentenced to five years in prison. After October 2013, the offense would have been classified as a level 4 drug felony and punishable by six months to one year in prison, plus one year of mandatory parole. §§ 18-1.3-401.5(2)(a), 18-18-405(2)(d), C.R.S. 2019.

- As of March 1, 2020, a defendant convicted of the drug possession offenses Session was convicted of may be eligible, upon successful completion of a community-based sentence and treatment, to have the court vacate his felony conviction and enter a conviction for a level 1 drug misdemeanor conviction instead. § 18-1.3-103.5(2)(a), (b), C.R.S. 2019.

26

- Simple possession of narcotics or conspiracy to possess narcotics isn't per se grave and serious. *Wells-Yates*, ¶ 2; *Melton*, ¶ 11.

- Session was convicted of second degree burglary in January 1995 and attempted second degree burglary in June 1993. At the time of sentencing, second degree burglary and attempted second degree burglary were both considered per se grave and serious offenses. *Deroulet*, 48 P.3d at 524; *Close*, 48 P.3d at 536. In light of *Wells-Yates*, ¶ 65 nn.17 & 18, and our analysis above, we conclude that neither crime is per se grave and serious. *See also Tran*, ¶¶ 94, 98-101.

- Case law has identified other considerations: the change in drug laws in this state, the harm caused or threatened by the offenses, the magnitude of the offenses, whether they were lesser included offenses or attempts, the defendant's culpability or mental state, and the defendant's parole eligibility.

¶ 51 While we recognize that we may perform our own abbreviated proportionality analysis, we decline to do so because such a review

requires "an analysis of the facts and circumstances surrounding [each triggering offense] and the facts and circumstances surrounding . . . [the] predicate offense[]," and because the trial court is "'uniquely suited' to make these factual determinations." *Wells-Yates*, ¶ 75 (quoting *People v. Gaskins*, 825 P.2d 30, 35 (Colo. 1992)).  We therefore remand to the trial court to conduct the abbreviated proportionality review under *Wells-Yates*, *Melton*, and *McRae*, and, if it determines it is warranted, an extended proportionality review.  We express no opinion on the outcome of that review, including whether an extended proportionality review will be warranted.

## III.   Conclusion

¶ 52      The judgment of conviction is affirmed, the sentence is vacated, and the case is remanded for a new proportionality review.

JUDGE DAILEY and JUDGE HAWTHORNE concur.