503 P.3d 940
2021 COA 134
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Jeffrey Thomas CAIME, Defendant-Appellant.
Court of Appeals No. 18CA2423
Colorado Court of Appeals, Division IV.
Announced November 4, 2021
Philip J. Weiser, Attorney General, Jillian J. Price, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
Megan A. Ring, Colorado State Public Defender, Chelsea A. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant
Opinion by JUDGE TOW
¶ 1 Defendant, Jeffrey Thomas Caime, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of a controlled substance as a special offender. In addition to challenging the conviction and the trial court's adjudication of him as a habitual offender, Caime attacks the adequacy of the trial court's proportionality review of his habitual criminal sentence.
¶ 2 Although we discern no basis to reverse the conviction or the habitual offender adjudication, we conclude that Caime is entitled to a new proportionality review. In reaching this conclusion, we hold as a matter of first impression that vehicular assault (reckless driving) is not a per se grave or serious offense. Thus, we affirm the conviction but vacate the sentence and remand for further proceedings.
I. Factual Background
¶ 3 The following evidence was presented at trial.
¶ 4 Two officers spotted a parked car that had been reported stolen. After an altercation, officers placed both occupants of the vehicle — Caime (the driver) and Mark Penman (the passenger) — in custody. Upon searching the car, officers found a gun in between the driver's seat and center console and a bag of methamphetamine on the driver's side floorboard.
¶ 5 Officers interviewed Caime and Penman. In Caime's interview, a recording of 503 P.3d 944 which was played at trial, he admitted that he dealt methamphetamine, possessed methamphetamine that day, and was there to sell some to Penman. Penman testified at trial that he remembered telling officers in his interview that he was there to buy methamphetamine from Caime and that Caime was his only dealer. Penman also testified that there was a gun in the car.
¶ 6 Caime was charged with possession of a controlled substance, possession with intent to manufacture or distribute a controlled substance, and possession of a weapon by a previous offender (POWPO). He was also charged with special offender and habitual criminal sentencing counts. The jury convicted Caime of possession of a controlled substance and found that he was a special offender. The trial court adjudicated Caime a habitual offender and, after conducting an abbreviated proportionality review, imposed the statutorily mandated sixty-four-year sentence for his conviction.[1] ¶ 7 Caime now appeals, raising four contentions. He contends that the court reversibly erred by admitting res gestae or prior act evidence at trial. He also contends that the special offender count was constructively amended. He contends the trial court reversibly erred by admitting improper hearsay evidence during the habitual criminal proceeding. And he contends that the trial court conducted an inadequate abbreviated proportionality review of his habitual offender sentence. We reject his first three contentions but agree with his fourth.
II. Admitting Res Gestae or CRE 404(b) Evidence was not Reversible Error
¶ 8 Caime argues that the trial court reversibly erred by admitting evidence of his history of dealing drugs as res gestae evidence and by admitting such evidence without the protective measures required by CRE 404(b). The People assume, without conceding, that the trial court erroneously admitted the evidence but argue that any error was harmless. We agree with the People.
A. Additional Facts
¶ 9 The trial court permitted the jury to hear the following evidence:
• Caime's recorded interview, in which he told police that he would give Penman "dope" in exchange for tools or electronics, and that was "pretty much" their relationship;
• Penman's testimony that he saw Caime "once or twice a year" and that he did not remember making the statement to Officer Jonathan Dennis that he purchased methamphetamine from Caime two or three times a week; and
• Officer Dennis's testimony that Penman told him "[Caime] was his only dealer" and he purchased methamphetamine from Caime "three or four times a month."
¶ 10 Before the jury heard Officer Dennis's testimony, the judge gave the jury the following limiting instruction: "you are only to consider that statement as it relates to Mr. Penman's credibility. You are not to consider it for any other reason." Caime's counsel objected to the three statements but did not object to the limiting instruction.
B. Standard of Review and Applicable Law ¶ 11 We review a trial court's evidentiary rulings for an abuse of discretion. People v. Rath , 44 P.3d 1033, 1043 (Colo. 2002). "[W]e review nonconstitutional trial errors that were preserved by objection for harmless error." Hagos v. People , 2012 CO 63, ¶ 12, 288 P.3d 116. "[W]e reverse if the error ‘substantially influenced the verdict or affected the fairness of the trial proceedings.’ " Id. (quoting Tevlin v. People , 715 P.2d 338, 342 (Colo. 1986) ). Any preserved error will be disregarded as harmless when "there is no reasonable probability that it contributed to the defendant's conviction." Crider v. People , 186 P.3d 39, 42 (Colo. 2008).
C. Analysis ¶ 12 We agree with the People's argument that the relevance of these statements relates to whether Caime had the intent to manufacture or distribute the methamphetamine. 503 P.3d 945 The jury acquitted Caime of that charge. Thus, any error was harmless. See Kreiser v. People , 199 Colo. 20, 24, 604 P.2d 27, 30 (1979). ¶ 13 Even if we were to accept Caime's view that the challenged statements were relevant to the charge of simple possession of methamphetamine, any error would be harmless. The jury heard Caime say in his interview, "I had my, my dope in my hand."[2] Caime's independent admission that he was holding "dope" is overwhelming evidence that supports his conviction for possession of a controlled substance. Thus, there is no reasonable probability that the challenged statements substantially influenced the verdict or impaired the fairness of the trial. See People v. Herron , 251 P.3d 1190, 1198 (Colo. App. 2010). ¶ 14 Finally, we presume that a jury follows the trial court's limiting instructions. See Cordova v. People , 880 P.2d 1216, 1220 (Colo. 1994). There is nothing in the record to indicate that the jury here did not.
¶ 15 We therefore discern no reversible error.
III. The Special Offender Jury Instruction was not Plainly Erroneous
¶ 16 Caime next contends that the jury instruction regarding the special offender sentencing factor constructively amended that charge. We disagree.
A. Additional Facts
¶ 17 The complaint charged Caime as a special offender as follows:
Between and including July 14, 2015 and July 15, 2015, Jeffrey Thomas Caime committed the felony offenses charged in counts one and two and the defendant or a confederate of the defendant possessed a firearm in a vehicle the defendant was occupying during the commission of the offense ; in violation of section 18-18-407(1)(d)(II), C.R.S.
(Emphasis added.)
¶ 18 To address the special offender component of the charges, the verdict form for each charge instructed the jury that, if it found Caime guilty of that charge, it must decide whether the offense involved a deadly weapon or firearm. And the verdict form further instructed the jury that they could conclude the offense involved a deadly weapon or firearm only if
Mr. Caime or a confederate of Mr. Caime possessed a firearm, as that term is defined in your instructions, to which Mr. Caime or confederate had access in a manner that posed a risk to others or in a vehicle Mr. Caime was occupying at the time of the commission of Possession of a Controlled Substance (Methamphetamine).
(Emphasis added.)
B. Standard of Review and Applicable Law ¶ 19 We review de novo whether a constructive amendment occurred. People v. Carter , 2021 COA 29, ¶ 35, 486 P.3d 473. A constructive amendment occurs when a jury instruction "changes an essential element of the charged offense and thereby alters the substance of the charging instrument." People v. Rodriguez , 914 P.2d 230, 257 (Colo. 1996). ¶ 20 Because Caime's attorney did not object to the special offender language, we review for plain error. See People v. Rediger , 2018 CO 32, ¶ 47, 416 P.3d 893 ; see also Carter , ¶¶ 34-48 (concluding, contrary to prior divisions of this court, that a constructive amendment is not structural error). A plain error is one that is obvious and that "so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." Hoggard v. People , 2020 CO 54, ¶ 12, 465 P.3d 34 (quoting People v. Weinreich , 119 P.3d 1073, 1078 (Colo. 2005) ).
¶ 21 As relevant here, the special offender statute provides that anyone who commits a felony offense of possession of a controlled substance under certain enumerated "aggravating circumstances commits a level 1 drug felony and is a special offender." § 18-18-407(1)(d)(II), C.R.S. 2020. As it pertains to Caime's charges, there were two ways the 503 P.3d 946 special offender count could be pleaded and proved. The first is if "[t]he defendant or a confederate of the defendant possessed a firearm ... to which the defendant or confederate had access in a manner that posed a risk to others ...." Id. The second is if "[t]he defendant or a confederate of the defendant possessed a firearm ... in a vehicle the defendant was occupying at the time of the commission of the violation." Id. While the charging document only included the latter circumstance, the jury instruction in the verdict form included both.
C. Analysis ¶ 22 Caime contends that the addition of the "posed a risk to others" language in the jury instruction was a constructive amendment. But we do not need to determine whether this was a constructive amendment because, even assuming it was, we conclude that any error in including this language was not plain. See Hagos , ¶ 14.
¶ 23 As charged, the jury would have had to find that either Caime or Penman had a gun in the car. As instructed, the jury's determination of guilt could be based either on that finding or a finding that the men had access to a gun in a manner that posed a risk to others. There was overwhelming — and undisputed — evidence of the first circumstance: that there was a gun in the car. See § 18-18-407(1)(d)(II) ; Hagos , ¶ 14 ; People v. Martinez , 2020 COA 141, ¶ 76, 486 P.3d 412 (concluding that there was no plain error because "the evidence against [the defendant] was overwhelming").
¶ 24 There was also no evidence, nor any statement by the prosecutor in closing argument, that Caime or Penman had access to the gun outside of the vehicle. The "posed a risk to others" language was, therefore, superfluous language because the jury would have had to first find that a gun was in the vehicle before they could have determined that Caime or Penman had "access [to it] in a manner that posed a risk to others." § 18-18-407(1)(d)(II) ; see also People v. Weeks , 2015 COA 77, ¶ 59, 369 P.3d 699 (elemental jury instruction containing superfluous language not plainly erroneous where the jury was given no evidentiary basis to which the jury could apply the extraneous language).
¶ 25 In sum, there was overwhelming evidence that there was a gun in the car. And there was no danger that the jury would have "force[d] the evidence to fit" the superfluous language. See Weeks , ¶ 59. Thus, we conclude that the inclusion of this language did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.
IV. Admission of Hearsay Evidence was not Plain Error
¶ 26 Caime argues that the trial court erroneously allowed the prosecution's fingerprint expert to testify at the habitual sentencing proceeding that her report was "verified by another competent examiner." Caime also asserts that this error rises to a constitutional level because he was denied his right to confront the witnesses against him. The People again assume, without conceding, that the testimony was improper but assert that any error was not plain error. Again, we agree with the People.
A. Standard of Review and Applicable Law ¶ 27 As noted, we review a trial court's evidentiary ruling for an abuse of discretion. Rath , 44 P.3d at 1043. We review unpreserved constitutional and nonconstitutional errors for plain error. Hagos , ¶ 14. Caime did not preserve these claims.
B. Analysis ¶ 28 Even if we were to assume the evidence was erroneously admitted, we conclude that any error was not plain. ¶ 29 The evidence was admitted at Caime's sentencing hearing — a bench trial. In that context, "the prejudicial effect of improperly admitted evidence is generally presumed innocuous." Liggett v. People , 135 P.3d 725, 733 (Colo. 2006). This is because there is "a presumption that all incompetent evidence is disregarded by the court in reaching its conclusions, and the judgment will not be disturbed unless it is clear that the court could not have reached the result but for the incompetent evidence." Id. (quoting 503 P.3d 947 People v. Kriho , 996 P.2d 158, 172 (Colo. App. 1999) ).
¶ 30 Nothing in the record indicates that the trial court placed any weight on the testimony that the expert's results were verified by someone else. Moreover, the statement was entirely duplicative of what the expert properly testified to regarding her own report — that all of the fingerprints were Caime's. We are convinced that any inadmissible testimony from the expert did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the trial court's adjudication of Caime as a habitual offender. See Hoggard , ¶ 12.[3] ¶ 31 Accordingly, we discern no reversible error.
V. Proportionality of Caime's Sentence
¶ 32 Finally, Caime argues that the trial court conducted an inadequate abbreviated proportionality review. We agree.
A. Additional Facts
¶ 33 The prosecution charged Caime as a habitual offender based on five predicate felonies: possession with intent to distribute a controlled substance, two POWPO convictions, vehicular assault (reckless driving), and criminal mischief. At the habitual criminal proceeding, the trial court found that the prosecution had proven each of the prior felonies.
¶ 34 At Caime's sentencing hearing, he requested that the trial court conduct a proportionality review. In conducting this review, the trial court made findings on each of Caime's predicate felonies.
¶ 35 As to Caime's prior conviction for possession with intent to distribute a controlled substance, the trial court opined,
I do find that this is still a grave and serious offense because of the with intent to distribute. Certainly simple possession, there is much more of an argument that a simple possession is not grave and serious because it is just for personal use, but when you talk about intent to distribute, you are bringing in the concerns which are essentially as laid out in Roshan [sic], a great societal harm caused by sale of illegal drugs and evils associated with their use. So you're not talking about someone just using drugs. You're talking about an intent to distribute to other people for their use and the subsequent problems that causes, which is just a whole broad effect of other crimes and other problems.
¶ 36 As to Caime's prior convictions for POWPO, the trial court said,
I am looking at People [v.] Allen , 111 P.3d 518 [(Colo.App. 2004)], which is a 2004 Court of Appeals case. In that case it was a federal conviction for possession of a firearm by a previous offender, but the appellate court equated it to the Colorado law, noting the purpose of the statute is to limit the possession of firearms by persons whose past conduct has demonstrated that they are unfit to be trusted with such dangerous instrumentalities, and therefore a convicted felon who possesses a firearm poses a substantial risk of harm to the public, and a conviction for such conduct constitutes a grave and serious offense. So I find those are both grave and serious offenses.
¶ 37 As to vehicular assault, the trial court could not see "any reasonable argument that that is not grave and serious." The court continued,
Any time you are driving a motor vehicle which can cause massive damage in a reckless manner, and does in fact cause [serious bodily injury], which is required under vehicular assault, clearly that is in some way a minor offense, but more appropriately or more relevant, the degree of harm and the magnitude of the crime is rather high in that there is serious bodily injury to someone when you are driving a motor vehicle that recklessly, and there is obviously a wider danger.
¶ 38 Finally, regarding Caime's prior conviction for criminal mischief, the trial court 503 P.3d 948 indicated that it would need to examine the facts and circumstances of that crime but observed that it had not been provided sufficient information to do so.
¶ 39 Because Caime's predicate offenses included, in the trial court's view, four convictions for three grave or serious offenses, the trial court concluded that the mandatory sixty-four-year sentence did not give rise to an inference of gross disproportionality. Thus, the court concluded it did not need to do an extended proportionality review.
B. Standard of Review and Applicable Law ¶ 40 The Eighth Amendment to the United States Constitution and article II, section 20 of the Colorado Constitution prohibit cruel and unusual punishment and require a sentence to be proportional to the crime. Wells-Yates v. People , 2019 CO 90M, ¶¶ 5, 10, 35, 454 P.3d 191. We review proportionality determinations de novo. Id. at ¶ 35. ¶ 41 To determine whether a sentence is grossly disproportionate, the court conducts a two-step analysis. Id. at ¶ 10. First, the sentencing court conducts an abbreviated proportionality review. Id. at ¶¶ 11-14. In an abbreviated proportionality review of a habitual criminal sentence, the court must (1) assess "the gravity or seriousness of all the offenses in question — the triggering offense and the predicate offenses"; and (2) consider "the harshness of the sentence imposed on the triggering offense." Id. at ¶ 23. ¶ 42 To determine if an offense is grave or serious, courts consider "the harm caused or threatened to the victim or society" and "the culpability of the offender" by considering the following nonexhaustive factors:
"[t]he absolute magnitude of the crime" ...; whether the crime is a lesser-included offense or the greater-inclusive offense; whether the crime involves a completed act or an attempt to commit an act; and whether the defendant was a principal or an accessory after the fact in the criminal episode. Id. at ¶ 12 (quoting Solem v. Helm , 463 U.S. 277, 292-93, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) ). Motive and the defendant's mental state — i.e., whether the defendant committed the act negligently, recklessly, knowingly, intentionally, or maliciously — are relevant to analyzing the defendant's culpability. Id. ¶ 43 This analysis generally requires a consideration of the facts and circumstances underlying the defendant's conviction. People v. Session , 2020 COA 158, ¶ 36, 480 P.3d 747. Certain crimes, however, have been designated as per se grave or serious offenses. Wells-Yates , ¶ 13. "For these crimes, ... a trial court may skip the first subpart of step one — the determination regarding the gravity or seriousness of the crimes ...." Id. But the designation of a crime as per se grave or serious must be "rare," id. at ¶ 63, and should not be used unless, based on the statutory elements and in every potential factual scenario, it involves grave or serious conduct, id. at ¶¶ 63-64 (explaining, for example, that robbery is a per se grave or serious offense). "Using the designation otherwise is fraught with peril." Id. at ¶ 63. ¶ 44 The sentencing court "must scrutinize the triggering offense and the predicate offenses and determine whether in combination they are so lacking in gravity or seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." Id. at ¶ 23. The Colorado Supreme Court has also clarified that even "when the triggering offenses and/or the predicate offenses supporting a habitual criminal sentence include grave or serious crimes ..., it would be improper for a court to skip the second subpart of the first step of an abbreviated proportionality review and neglect to consider the harshness of the penalty ...." Id. at ¶ 27. ¶ 45 If an inference exists that the sentence is grossly disproportionate, then the court must proceed to step two and conduct "an extended proportionality review," id. at ¶ 15, which involves comparing "the challenged sentence to sentences for other crimes in the same jurisdiction and sentences for the same crime in other jurisdictions," id. at ¶ 7.
503 P.3d 949 C. Analysis ¶ 46 Caime contends that the trial court conducted an inappropriate abbreviated proportionality review because it did not engage in a particularized analysis of the facts and circumstances surrounding each offense. While we acknowledge that the trial court did not have the benefit of the analytical framework announced in Wells-Yates at the time that it conducted its proportionality review, we nevertheless agree that the court's abbreviated proportionality review was insufficient.
¶ 47 Initially, we reject the People's contention that the trial court "engaged in a particularized, case-by-case analysis" of the predicate offenses. To the contrary, for all except the criminal mischief offense, the court considered only the elements of the offenses. Essentially, the trial court concluded that possession with intent to distribute a controlled substance, POWPO, and vehicular assault were per se grave or serious offenses. On the other hand, the trial court did not treat criminal mischief as a per se grave or serious crime; rather, the trial court concluded that it did not have enough information about the facts underlying the offense to determine its gravity or seriousness.
¶ 48 Two appellate decisions, both decided after the sentence was imposed in this case, are relevant here. In Wells-Yates , ¶¶ 71-72, the Colorado Supreme Court held that possession with intent to distribute a controlled substance is not a per se grave or serious offense. And in People v. Wright , 2021 COA 106, ¶¶ 73-79, 498 P.3d 1147, a division of this court held that POWPO is not per se grave or serious. ¶ 49 As to vehicular assault (reckless driving), no Colorado appellate court has yet addressed whether that offense is per se grave or serious. We now consider that question and conclude that it is not.
¶ 50 A person commits vehicular assault (reckless driving) by "operat[ing] or driv[ing] a motor vehicle in a reckless manner, [if] this conduct is the proximate cause of serious bodily injury to another ...." § 18-3-205(1)(a), C.R.S. 2020. "A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists." § 18-1-501(8), C.R.S. 2020. "Motor vehicle" is defined in the criminal code as "any self-propelled device by which persons or property may be moved, carried, or transported from one place to another by land, water, or air, except devices operated on rails, tracks, or cables fixed to the ground or supported by pylons, towers, or other structures." § 18-1-901(3)(k), C.R.S. 2020; cf. People v. Zweygardt , 2012 COA 119, ¶¶ 17, 24, 298 P.3d 1018 (explaining that "motor vehicle" is defined more broadly in the criminal code than in the traffic code). Section 18-1-901(3)(p) defines "serious bodily injury" as a
bodily injury which, either at the time of the actual injury or at a later time, involves a substantial risk of death, a substantial risk of serious permanent disfigurement, a substantial risk of protracted loss or impairment of the function of any part or organ of the body, or breaks, fractures, or burns of the second or third degree.
¶ 51 On the surface, it might appear that vehicular assault (reckless driving) must be a per se serious offense because it necessarily involves causing serious bodily injury. But, for three reasons, we do not think this is the case.
¶ 52 First, there is at least one offense that involves not just serious bodily injury but death that is not even classified as a felony, let alone considered a grave or serious offense. See § 42-4-1402(2)(c), C.R.S. 2020 (defining careless driving resulting in death as a class 1 traffic misdemeanor).
¶ 53 Second, we are aware of no crime that has been designated a per se grave or serious offense solely because it involves serious bodily injury. To the contrary, in People v. Oldright , 2017 COA 91, ¶ 14, 457 P.3d 638, a division of this court concluded that first degree assault was per se grave or serious "because the legislature deems it a crime of violence and an extraordinary risk crime, [the defendant] used a deadly weapon to commit the crime, and the victim suffered serious bodily injury." See also People v. Gee , 2015 COA 151, ¶ 60, 371 P.3d 714 (concluding that first degree assault is a per se grave or 503 P.3d 950 serious offense because, "by its nature, [the crime] involves violence or the potential for violence"). Indeed, the supreme court in Wells-Yates focused not on the technical term "serious bodily injury" but instead considered whether the offense in question would always involve "grave harm (or the threat of grave harm)." Wells-Yates , ¶ 64. ¶ 54 And third, the legislature's use of the term "serious" as a component of a statutorily defined term of art ("serious bodily injury") has little, if any, bearing on the supreme court's intended meaning when it uses the same word in a more generalized context such as "a serious crime." Indeed, even when the same body (such as the General Assembly) uses a particular word in two different contexts, the meaning of the word may change. Consider the word "violence" for example: the crime of criminal mischief might qualify as a crime of "domestic violence" under section 18-6-800.3(1), C.R.S. 2020, but it is not a "crime of violence" under section 18-1.3-406(2), C.R.S. 2020.
¶ 55 Turning to the crime of vehicular assault (reckless driving), we note that the General Assembly has not defined the offense as a crime of violence. See § 18-1.3-406(2). Nor has it declared the crime to be one that presents an extraordinary risk of harm to society. See § 18-1.3-401(10)(b), C.R.S. 2020. And vehicular assault (reckless driving) does not, by its nature, "involve[ ] violence or the potential for violence." Gee , ¶ 60.
¶ 56 Thus, while most of the circumstances giving rise to a charge of vehicular assault (reckless driving) may be considered grave or serious, we cannot say that of every potential factual scenario. For example, one may commit this offense by disregarding the risk that a sidewalk may be crowded and driving an electric scooter over someone else's foot causing a fractured toe. This factual scenario, in our view, does not present the level of "grave harm (or the threat of grave harm)" to warrant classification of vehicular assault (reckless driving) as per se grave or serious. See Wells-Yates , ¶ 64. Instead, the gravity or seriousness must be determined on a case-by-case basis considering the surrounding facts and circumstances of the offense. See Session , ¶ 36.
¶ 57 In light of Wells-Yates , Wright , and our conclusion that vehicular assault (reckless driving) is not a per se grave or serious offense, we remand for the trial court to conduct a new proportionality review.[4] VI. Conclusion
¶ 58 The judgment of conviction is affirmed, the sixty-four-year sentence for possession of a controlled substance is vacated, and the case is remanded for a new proportionality review consistent with this opinion. In conducting its abbreviated proportionality review on remand, the trial court is specifically instructed to (1) consider the factual circumstances underlying Caime's convictions for possession with intent to distribute a controlled substance, POWPO, vehicular assault (reckless driving), and criminal mischief to determine the gravity or seriousness of those crimes; and (2) consider the harshness of Caime's sixty-four-year sentence in light of the gravity or seriousness — or lack thereof — of these offenses along with Caime's triggering offense of possession of a controlled substance as a special offender, as well as his parole eligibility.
JUDGE J. JONES and JUDGE FREYRE concur.
--------
Notes:
[1] The prosecution dismissed the POWPO charge.
[2] Caime does not challenge this statement's admissibility.
[3] Indeed, even assuming Caime preserved the issue, we are convinced beyond a reasonable doubt that there is no reasonable possibility that any inadmissible testimony affected the adjudication. See Hagos v. People , 2012 CO 63, ¶ 11, 288 P.3d 116.
[4] Because the record does not contain any information about the facts and circumstances underlying Caime's prior offenses, we express no opinion regarding the proper outcome of the proportionality review.
--------