The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 11, 2021

## 2021COA29

**No. 17CA2331, *People v. Carter* — Crimes — DUI — Prior Convictions; Criminal Law — Constructive Amendments — Structural Error**

A division of the court of appeals holds that a constructive amendment to a criminal charge is not structural error, rejecting a line of court of appeals cases holding that such an amendment is "per se reversible."

COLORADO COURT OF APPEALS                                    **2021COA29**

Court of Appeals No. 17CA2331
Arapahoe County District Court No. 17CR435
Honorable Andrew C. Baum, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Wayne Henderson Carter,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE J. JONES
Berger, J., concurs
J. Jones, J., concurs dubitante
Pawar, J., concurs in part and dissents in part

Announced March 11, 2021

Philip J. Weiser, Attorney General, Brian M. Lanni, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Rachel K. Mercer, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Wayne Henderson Carter, appeals his convictions for felony driving under the influence (felony DUI) and failure to present proof of insurance.  We conclude that the district court erred by (1) treating the requirement of three prior convictions for felony DUI as a sentence enhancer rather than an element of the offense and (2) constructively amending the failure to present proof of insurance charge by instructing the jury on operating a motor vehicle without insurance.

¶ 2    *Linnebur v. People*, 2020 CO 79M, recently decided by the supreme court, requires that we reverse Carter's conviction for felony DUI.  On remand, the court may enter a conviction for misdemeanor DUI.  If the People elect instead to retry Carter for felony DUI, and Carter raises a double jeopardy defense, the court should rule on the applicability of that defense to the facts of this case.

¶ 3    But as to the constructive amendment of the failure to present proof of insurance charge, we hold that Carter waived his contention on appeal or, alternatively, that the error wasn't plain.  In reaching the alternative holding that any error wasn't plain, we decline to follow decisions by other divisions of this court treating

1

constructive amendments as "per se reversible." We do so because (1) the Colorado Supreme Court has held that, outside the limited category of constitutional errors considered "structural," there is no constitutional error that is automatically reversible and (2) a constructive amendment isn't structural error. Nonetheless, the mittimus should reflect a conviction for operating a motor vehicle without insurance — the charge on which the jury was instructed — not failure to present proof of insurance.

¶ 4    We therefore reverse the conviction for felony DUI, affirm the conviction for operating a motor vehicle without insurance, and remand for correction of the mittimus and further proceedings consistent with this opinion.

## I. Background

¶ 5    The prosecution alleged that Carter drove drunk and got in a series of hit and run accidents in the space of several hours. When police eventually contacted Carter later that day, he was at a friend's house; his was car parked outside. He declined both a blood and breath test and didn't provide insurance information for the vehicle when a police officer asked him for it.

¶ 6     The People charged Carter with felony DUI, leaving the scene of an accident, and failure to present proof of insurance.[1]  A jury found Carter guilty of the first two offenses and of operating a motor vehicle without insurance.  On appeal, he challenges only the felony DUI and insurance coverage convictions.

## II.  Felony DUI

¶ 7     DUI is ordinarily a misdemeanor, but it becomes felony DUI if it occurs after three or more prior convictions for DUI, DUI per se, or driving while ability impaired (DWAI).  § 42-4-1301(1)(a), C.R.S. 2020.  Consequently, to prove felony DUI, the prosecution must prove that the defendant has three or more prior DUI, DUI per se, or DWAI convictions.

¶ 8     Carter filed a motion requesting that the prosecution be required to prove the three prior convictions to a jury beyond a reasonable doubt.  The district court ruled that the requirement of three prior convictions for felony DUI is a sentence enhancer, not an element of the offense, and therefore allowed the prosecution to prove the prior convictions to the court by a preponderance of the

---

[1] The People also charged Carter with driving after revocation prohibited, but the People later dismissed that charge.

3

evidence.  (After the jury verdicts, the court found that Carter had three prior qualifying offenses.)

¶ 9     Carter argues on appeal, as he did below, that the requirement of three prior convictions is an element of felony DUI, and that the district court therefore violated his constitutional right to have a jury decide that element beyond a reasonable doubt.

¶ 10    After the briefing in this case, the supreme court addressed this issue in *Linnebur*.  The court held that the requirement of three prior convictions is an element of felony DUI that must be proved to a jury beyond a reasonable doubt.  *Linnebur*, ¶ 31.  Based on *Linnebur*, we must conclude that the district court erred.  We therefore reverse Carter's felony DUI conviction.  On remand, the court may sentence Carter for misdemeanor DUI.  If the prosecution instead seeks to retry Carter on the felony DUI charge, and Carter raises a double jeopardy defense, the court must rule on that defense.  *Id.* at ¶ 32.

### III.  Operating a Motor Vehicle Without Insurance

¶ 11    Carter also contends that the district court constructively amended the failure to present proof of insurance charge in the complaint and information by instructing the jury on the elements

4

of a different and uncharged offense — operating a motor vehicle without insurance.

## A. Preservation and Standard of Review

¶ 12 Carter and the People agree that this issue was unpreserved. Both note that Carter's counsel failed to object to the court's instruction to the jury setting forth the elements of operating a motor vehicle without insurance rather than failure to present proof of insurance, or to the court's verdict form for operating a motor vehicle without insurance. Carter says this doesn't matter because the court constructively amended the charge, which is a "structural" error requiring reversal in all circumstances. The People respond that while there was a constructive amendment of that charge, an error of this type isn't structural, and we should review for plain error.[2]

¶ 13 We have an independent, affirmative obligation to determine whether a claim of error was preserved and to determine the appropriate standard of review under the law, notwithstanding the

---

[2] The People believe "[t]his issue was forfeited because defense counsel expressly agreed to the compulsory insurance jury instructions that [were] given."

parties' respective positions or concessions pertaining to those issues. *In re Marriage of Hogsett*, 2018 COA 176, ¶ 32 n.3 (an appellate court isn't bound by a party's concession regarding preservation), *aff'd sub nom. Hogsett v. Neale*, 2021 CO 1; *People v. Carter*, 2015 COA 36, ¶ 65 n.1 (J. Jones, J., specially concurring) (same); *People v. Corral*, 174 P.3d 837, 839 (Colo. App. 2007) (an appellate court isn't bound by the parties' agreement as to the appropriate remedy for an error); *see also Commonwealth v. Aviles*, 931 N.E.2d 500, 504 n.3 (Mass. App. Ct. 2010); *State v. Laune*, 464 P.3d 459, 436 (Or. Ct. App. 2020) (the appellate court is obligated to make its own preservation inquiry, notwithstanding any concession by the state).

¶ 14   We conclude that Carter didn't merely forfeit any claim of error, he waived it, meaning it isn't reviewable. But, in the alternative, we hold that even if Carter didn't waive the claim of error, it is subject to review for plain error because a constructive amendment isn't a structural error. And we further conclude that while there was a constructive amendment, the error wasn't plain.

## 1. Waiver

¶ 15 The People charged Carter with failing to present proof of insurance under section 42-4-1409(3)(a), C.R.S. 2020. The elements of that offense are that (1) after an accident or request to present evidence of a complying policy or certificate of self-insurance in full force and effect as required by law following any lawful traffic contact or during any traffic investigation by a peace officer; (2) an owner or operator of a motor vehicle; (3) fails to present such evidence. At trial, the prosecution introduced police officer body-camera video showing an investigating officer asking Carter for proof of insurance and Carter failing to present any.

¶ 16 At the jury instruction conference before testimony from the last witness, the court asked counsel how they wanted to handle the instructions, which they had reviewed.[3] Carter's attorney responded, "We have very few that are not *stipulated to*. So I think we can just talk about those, and then the rest of them there's not an objection from the defense side and there's no objection from the

---

[3] The record doesn't say which side tendered any particular instruction. But it is clear each side had reviewed a packet of proposed instructions before the instruction conference.

7

DA." (Emphasis added.) The court and counsel then discussed the few proposed instructions as to which defense counsel had concerns or objections. Those instructions didn't include the elemental instruction for the insurance charge or the related instruction concerning proof of that charge, even though the elemental instruction for the insurance charge didn't recite the elements for failure to present proof of insurance but instead recited the elements for operating a motor vehicle without insurance under section 42-4-1409(2). That instruction read as follows:

> The elements of the crime of operation without insurance are:
>
> 1. That Mr. Carter,
>
> 2. in the State of Colorado, at or about the date and place charged,
>
> 3. operated a motor vehicle,
>
> 4. on a public highway of this state,
>
> 5. without a complying policy or certificate of self-insurance in full force and effect as required by law.
>
> After considering all of the evidence, if you decide the prosecution has proven each of the elements beyond a reasonable doubt, you

8

> should find Mr. Carter guilty of operating
> without insurance.
>
> After considering all the evidence, if you decide
> the prosecution has failed to prove any one or
> more of the elements beyond a reasonable
> doubt, you should find Mr. Carter not guilty of
> operating without insurance.

¶ 17    This instruction therefore clearly labeled the offense "operation without insurance," not failure to present proof of insurance.  And it included elements differing from the originally charged offense: (1) it required proof that Carter operated, rather than "owne[d] or operat[ed]," *see* § 42-4-1409(3)(a), a motor vehicle; (2) it required proof that Carter didn't have insurance for the vehicle, not merely that he didn't present proof of insurance when asked; and (3) it didn't require proof of a request by a peace officer for proof of valid insurance.

¶ 18    This elemental instruction was coupled with an instruction relating to proof of the charge of "operation without insurance."  It said,

> As to the charge of operation without
> insurance, testimony that an operator of a
> motor vehicle failed to immediately present
> evidence of a complying policy or certificate of
> self-insurance in full force and effect as
> required by law, when requested to do so by a

9

peace officer, gives rise to a permissible inference that Mr. Carter did not have such a policy or certificate.

A permissible inference allows, but does not require, you to find a fact from proof of another fact or facts, if that conclusion is justified by the evidence as a whole. It is entirely your decision to determine what weight shall be given to the evidence.

You must bear in mind that the prosecution always has the burden of proving each element of the offense beyond a reasonable doubt, and that a permissible inference does not shift that burden to Mr. Carter.

¶ 19     This instruction tracked section 42-4-1409(5), which says an inference of lack of insurance may be drawn as to the offense of operating a motor vehicle without insurance under section 42-4-1409(2) based on a driver's failure to present proof of insurance when asked for it.

¶ 20     So this instruction, too, labeled the offense "operation without insurance." And, as a logical matter and under the express statutory language, such an instruction is not given in connection with a charge of failure to present proof of insurance under section 42-4-1409(3)(a).

10

¶ 21    The verdict form for the charge was labeled "**CHARGE OF OPERATING WITHOUT INSURANCE**."  And it twice more identified the charge as "OPERATING WITHOUT INSURANCE."

¶ 22    Following a break and testimony from the last witness, the court and the attorneys went back on the record to discuss the instructions, some of which had been revised based on the earlier discussion.  The court went through each instruction separately, asking each attorney whether counsel objected.  As to the two instructions at issue, the following colloquy took place:

> THE COURT:  Number 17 is the elements of *operating a vehicle without insurance.*  Any objection from the People?
>
> [PROSECUTOR]:  No.
>
> THE COURT:  From the defense?
>
> [DEFENSE COUNSEL]:  No.
>
> THE COURT:  And that is regarding the *operation* [sic] *a vehicle without insurance* is the permissible inference regarding insurance policy [sic].  Any objection by the People?
>
> [PROSECUTOR]:  No.
>
> THE COURT:  From the defense?
>
> [DEFENSE COUNSEL]:  No.

(Emphasis added.)

11

¶ 23    They later covered the verdict forms.

> THE COURT:  Next is Count No. 3, jury verdict form, *Operating without Insurance*.  Any objection from the People?
>
> [PROSECUTOR]:  No.
>
> THE COURT:  From the defense?
>
> [DEFENSE COUNSEL]:  No.

(Emphasis added.)

¶ 24    The prosecutor didn't mention the insurance charge specifically during closing argument.  Defense counsel tried to convince the jury that Carter wasn't operating the vehicle at the time of the events giving rise to the charges.  (This was consistent with Carter's theory of the case instruction, which articulated this theory as his only defense.)  Defense counsel twice referred to the insurance charge — once as "Driving Without Insurance" and later as "driving while not having any insurance."

¶ 25    Putting all this together, we conclude that Carter waived any contention that the court erred by constructively amending the charge.

¶ 26    "Waiver . . . is 'the *intentional* relinquishment of a *known* right or privilege.'" *People v. Rediger*, 2018 CO 32, ¶ 39 (quoting *Dep't of*

12

*Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). It differs from forfeiture, which is "the failure to make the timely assertion of a right." *Id.* at ¶ 40 (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). And the consequences for either accordingly differ: if a contention is waived, the appellate court won't review it at all; if it is merely forfeited, the appellate court may review it for plain error. *Id.*

¶ 27    We don't presume a waiver; we presume to the contrary. *Id.* at ¶¶ 39, 46. But at the same time, a waiver can be implied; it doesn't need to be express. *Id.* at ¶ 42; *accord Phillips v. People*, 2019 CO 72, ¶ 21.

¶ 28    *Rediger*, like this case, involved a claim of a constructive amendment. The charging document charged the offense under one subsection of a statute, but the elemental instruction tracked a different subsection of the same statute. *Rediger*, ¶¶ 7-8. (The charged subsection required proof of an element that the instructed charge didn't, lessening the prosecution's burden of proof. *Id.* at ¶ 51.) At the jury instruction conference, defense counsel said he had read the proposed instructions but didn't say anything about the elemental instruction. Before the court read the instructions to

13

the jury, it asked whether defense counsel was "satisfied with the instructions." Defense counsel said, "Yes, Defense is satisfied." *Id.* at ¶ 10.

¶ 29    The supreme court held that defense counsel's statement, "standing alone," didn't show a waiver of the constructive amendment issue. *Id.* at ¶ 41. It based this conclusion on (1) the fact that there was only this one, equivocal statement; (2) that statement related to the instructions as a whole; (3) there was no record indication that the elemental instruction had been discussed "at all"; and (4) there was no apparent reason for counsel not to object the instruction. *Id.* at ¶¶ 41-43. Considering all the circumstances, the court concluded that "neglect, not intent, explain[ed]" counsel's failure to object. *Id.* at ¶ 44; *see also People v. Smith*, 2018 CO 33, ¶¶ 6, 16, 18 (no waiver under similar circumstances).

¶ 30    This case is very different. Defense counsel expressly indicated that she had been through the instructions to determine which ones she was concerned with or objected to and which ones she and the prosecutor "stipulated to." The instructions and verdict form at issue fall into the latter category. Further, the court went

14

through each instruction and the verdict forms one by one with counsel. The court expressly identified the two insurance charge instructions as relating to "operating a motor vehicle without insurance" and the charge on the verdict form as "operating without insurance." Defense counsel said she didn't object to any of them. As well, the second instruction — relating to the permissible inference — by its clear language related to the charge of operating a motor vehicle without insurance: it is impossible to read that instruction as potentially relating to a charge of failure to present proof of insurance. (As noted, the statute says clearly that this inference applies to a charge of driving without insurance, but the inference does not apply to a charge of failure to present proof of insurance.) If all this weren't enough to show that defense counsel was aware that the charge had been changed, she twice in closing argument demonstrated such knowledge by referring to the charge as driving without insurance.

¶ 31 This case also differs from *Rediger* in that Carter's counsel had an obvious strategic reason not to object to the change in the charge. Recall, Carter's only defense was that he hadn't driven the vehicle. That would be a complete defense to a charge of operating

15

a motor vehicle without insurance because such a charge requires proof of operating the vehicle. A charge of failure to present proof of insurance, on the other hand, doesn't require proof of operating the vehicle; proof of ownership suffices. § 42-4-1409(3)(a) ("owner or operator"). And there was evidence Carter owned the vehicle.

¶ 32 Allowing the charge to be changed presented another strategic advantage for the defense. The only evidence that Carter didn't have insurance was the video showing the officer asking Carter for proof of insurance and Carter failing to present it. That evidence was unrebutted and unchallenged. For a charge of failure to present proof of insurance, this would be direct evidence of the offense. But it wouldn't be for a charge of operating a motor vehicle without insurance. Rather, as the jury instruction said, it would instead be evidence from which the jury could, but was not required to, infer a lack of insurance. So, given the nature of the evidence, the charge of operating a motor vehicle without insurance left more wiggle room for the defense than did a charge of failure to present proof of insurance.

¶ 33 In sum, we conclude that the totality of the relevant circumstances reveals far more than a single rote statement that

counsel was not objecting to the jury instructions as a whole, as in *Rediger*. It shows knowledge that the charge had changed and a decision to go along with it. This was a waiver. *Cf. Richardson v. People*, 2020 CO 46, ¶¶ 6-10, 24-30 (alleged error of allowing judge's wife to serve on jury was waived where defense counsel was aware the prospective juror was the judge's wife but didn't challenge her for cause or use a peremptory challenge to exclude her); *Stackhouse v. People*, 2015 CO 48, ¶ 16 (counsel waived objection to closure of courtroom by remaining silent when the court closed it; counsel was obviously aware of the issue)[4]; *People v. Tee*, 2018 COA 84, ¶¶ 30-37 (counsel waived contention as to pre-deliberation by jurors by expressing the concern but choosing not to request a mistrial); *People v. Gregor*, 26 P.3d 530, 532-33 (Colo. App. 2000) (challenge to instruction barred by invited error because defense counsel expressly approved that particular instruction).

---

[4] In *Phillips v. People*, 2019 CO 72, ¶¶ 26-29, the supreme court recognized the continued validity of *Stackhouse* after *Rediger*.

17

¶ 34    But even if Carter didn't waive this contention, we conclude in

the alternative that plain error review applies, that there was a

constructive amendment, and that the error wasn't plain.[5]

---

[5] The partial dissent chides us for considering Carter's constructive amendment contention for plain error after concluding that Carter waived it. But we do so only in the alternative. *See, e.g., People v. Murray*, 2018 COA 102, ¶ 45 (addressing contention for plain error in the alternative after concluding that the contention was waived); *cf. Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 954 (5th Cir. 2011) (after determining that the district court lacked subject matter jurisdiction, holding in the alternative that the plaintiffs had failed to state a claim). There is no authority of which we are aware that says an appellate court can't, or even shouldn't, resolve contentions on alternative bases. Indeed, that practice is so common that it would seemingly need no defense. *See State v. Robertson*, 438 P.3d 491, 501-02 (Utah 2017) (explaining that alternative holdings are common and serve legitimate purposes). Nor is there any authority of which we are aware that says waiver is an exception to a court's ability to take such a belt and suspenders approach. And we see no logical reason for such a rule — one that would be completely at odds with notions of judicial efficiency. For instance, an alternative holding may eliminate the need for further time- and resource-consuming proceedings by the appellate court in the event of a reversal on one issue by a higher court. Similarly, such a holding may enable a higher court to affirm the lower court's ruling notwithstanding its disagreement with one basis for the lower court's decision, eliminating the need for further proceedings. Nor does it matter, as the partial dissent suggests, that the People don't argue waiver. After all, as the partial dissent correctly notes, "[w]e have an affirmative and independent obligation to determine whether a claim of error was preserved and what the proper standard of review is." *See infra* ¶ 75.

18

## 2.	Structural Error versus Plain Error

¶ 35	If not waived, we first review de novo whether a constructive amendment occurred.  *See People v. Rail*, 2016 COA 24, ¶¶ 48-49, *aff'd on other grounds*, 2019 CO 99.  If it did, we must then determine whether the constructive amendment requires reversal. Determining the correct test for reversal depends on whether we conclude that constructive amendments can be reviewed for plain error or are, instead, structural errors that require reversal in all circumstances.

¶ 36	Our supreme court has never held that a constructive amendment constitutes structural error.  *See Rediger*, ¶ 47 n.4 ("Because we conclude that the error was plain, we need not consider whether a constructive amendment amounts to structural error.").  But divisions of this court have held (or assumed) on several occasions that an error in allowing a constructive amendment is "per se reversible," meaning that it is always reversible.  *See Rail*, ¶ 50; *People v. Vigil*, 2015 COA 88M, ¶ 30, *aff'd*, 2019 CO 105; *People v. Gallegos*, 260 P.3d 15, 26 (Colo. App. 2010); *People v. Pahl*, 169 P.3d 169, 177 (Colo. App. 2006); *People v. Huynh*, 98 P.3d 907, 911 (Colo. App. 2004); *People v. Foster*, 971

19

P.2d 1082, 1087 (Colo. App. 1998). In effect, these divisions treated this kind of error as what current jurisprudence on standards of review calls "structural." Because the result in this case differs depending on whether the error is structural, we must decide whether this line of Colorado Court of Appeals case law is correct.

¶ 37 *Foster* is the first case in which a division of this court held that a constructive amendment is "per se reversible," and all the subsequent cases so holding can trace their lineage to *Foster*. In *Foster*, the division cited *United States v. Wright*, 932 F.2d 868 (10th Cir. 1991), *overruled on other grounds by United States v. Flowers*, 464 F.3d 1127 (10th Cir. 2006), for the proposition that a constructive amendment "is reversible per se." 971 P.2d at 1087. That case did so hold. It cited earlier Tenth Circuit decisions which ultimately relied on *Stirone v. United States*, 361 U.S. 212 (1960). *Stirone*, then, is the fountainhead of this maxim.

¶ 38 But does *Stirone* actually support the notion that a constructive amendment *always* requires reversal? And even if it does, is such a rule consistent with intervening Supreme Court precedent? The answer to the first question is "maybe," but the answer to the second is "no."

¶ 39    In *Stirone*, the district court allowed the prosecution to prove

the offense charged in the indictment with evidence of acts different

from those charged in the indictment. *Id.* at 213-14.  The Court

held that this ran afoul of the Fifth Amendment's requirement that

a prosecution be commenced by an indictment from a grand jury;

only a grand jury can amend an indictment.  *Id.* at 215-17 (citing

*Ex parte Bain*, 121 U.S. 1, 10 (1887)).  The Court regarded a

violation of this grand jury indictment requirement as "far too

serious to be treated as nothing more than a variance and then

dismissed as harmless error." *Id.* at 217.  From this, courts derived

the automatic reversal rule for constructive amendments (even

though the error in *Stirone* was preserved).

¶ 40    We note initially that *Stirone* was based on the Fifth

Amendment's grand jury indictment clause, a provision of the

United States Constitution that doesn't apply to state prosecutions.

*Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Hurtado v.

California*, 110 U.S. 516, 538 (1884); *Losavio v. Robb*, 195 Colo.

533, 536 n.2, 579 P.2d 1152, 1154 n.2 (1978).  Nor, for that matter

is there any right to a grand jury indictment under the Colorado

Constitution. *Losavio*, 195 Colo. at 536, 579 P.2d at 1154.  This

isn't to say that a constructive amendment doesn't give rise to a constitutional violation — it has been said to be a due process violation, *see People v. Deutsch*, 2020 COA 114, ¶ 25 — but it is to say that the right to a grand jury indictment that *Stirone* deemed so important that an infringement couldn't be harmless simply isn't implicated in a state prosecution.

¶ 41    More importantly, in *United States v. Cotton*, 535 U.S. 625 (2002), the Court significantly weakened, if not outright eliminated, *Stirone*'s basis for its apparent automatic reversal rule.  It did so by overruling *Ex parte Bain*, on which *Stirone* so heavily relied, in so far as that case treated defects in indictments as "jurisdictional."  *Id.* at 629-31; *see also People v. Rodriguez*, 914 P.2d 250, 257 (Colo. 1996) (observing that *Stirone* was premised on federal courts' jurisdiction).  In the course of doing so, the Court observed that in *Stirone* the defendant had objected in the trial court.  *Cotton*, 535 U.S. at 631.  The Court then went on to apply plain error review to a defect in an indictment that under *Ex parte Bain* would have been treated as a jurisdictional defect requiring reversal.  *Id.* at 631-32. And in doing that, it relied on much more recent Supreme Court precedent expanding the application of plain error review — *Olano*,

507 U.S. 725, and *Johnson v. United States*, 520 U.S. 461 (1997). *Cotton*, 535 U.S. at 631-32.

¶ 42     And that brings us to the most important reason that *Stirone* can't be relied on as dictating a rule of "per se" or "automatic" reversal for constructive amendments: such a rule can't be squared with much more recent Supreme Court authority.

¶ 43     In *People v. Novotny*, 2014 CO 18, the Colorado Supreme Court discussed the evolution of United States Supreme Court precedent distinguishing among constitutional errors.  Under that precedent, there are trial errors, which may be deemed harmless, and structural errors, which may not be.  *Id.* at ¶¶ 17-20.  The supreme court held that, under current jurisprudence, apart from structural error there is no error, constitutional or otherwise,[6] that requires automatic reversal; rather, all errors that aren't structural must be assessed using the appropriate case-specific, outcome-determinative test.  *Id.* at ¶¶ 21-22, 27.  Indeed, this conclusion necessarily follows from the Court's decisions in *Olano, Johnson,*

---

[6] The exception is when there is an express legislative mandate. *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 24; *People v. Novotny*, 2014 CO 18, ¶¶ 26, 27.

23

and *Neder v. United States*, 527 U.S. 1, 8-15 (1999), among other cases.

¶ 44     So the question becomes: Does *Stirone* or any other controlling authority hold that allowing a constructive amendment is a structural error?  The United States Supreme Court has never included constructive amendments when listing those errors considered structural.  *See, e.g., Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1908 (2017); *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148-49 (2006); *Neder*, 527 U.S. at 8; *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991).  Nor has the Colorado Supreme Court ever done so.  *See, e.g., Hagos v. People*, 2012 CO 63, ¶ 10; *Lehnert v. People*, 244 P.3d 1180, 1185 (Colo. 2010).

¶ 45     Because of the relatively recent developments in the Supreme Court's constitutional error jurisprudence, other courts have concluded that the error addressed in *Stirone* is not structural. *E.g., United States v. Allen*, 406 F.3d 940, 943-45 (8th Cir. 2005) (en banc).[7]  The Colorado Supreme Court hasn't gone so far as to

---

[7] Candidly, some courts continue to apply the reversible per se rule, but as far as we can tell, they do so without analyzing its continued validity.

expressly so hold, but it has done the next best thing.  In *People v. Weinreich*, 119 P.3d 1073 (Colo. 2005), the court reviewed a constructive amendment for plain error.  *See also People v. Weeks*, 2015 COA 77, ¶ 53 (applying plain error review to a constructive amendment, citing *Weinreich*); § 16-10-202, C.R.S. 2020 (a variance from a charging document is not grounds for acquittal unless it "is material to the merits of the case or may be prejudicial to the defendant").  The court did so in *Rediger*, ¶ 47 n.4, as well, though it said it didn't need to consider whether such an error is structural.

¶ 46     Controlling authority holds that structural errors are limited to those errors that "affect[] the framework within which the trial proceeds" and "defy analysis by 'harmless-error' standards." *Fulminante*, 499 U.S. at 309-10; *accord Weaver*, 582 U.S. at \_\_\_, 137 S. Ct. at 1907-08.  Different kinds of errors may not be amenable to harmless error analysis for different reasons.  First, harm may be "irrelevant to the basis underlying the right," such as when "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest."  *Weaver*, 582 U.S. at \_\_\_, 137 S. Ct. at 1908 (giving the

25

defendant's right to conduct his own defense as an example).

Second, "the effect of the error [may be] simply too hard to measure." *Id.* (giving the right to choose one's attorney as an example). And third, the error may "always result[] in fundamental unfairness." *Id.* (giving denial of counsel and failing to give a reasonable doubt instruction as examples).

¶ 47 A constructive amendment doesn't fit any of these categories. Such an amendment implicates the defendant's right to be protected from an erroneous conviction: it doesn't protect some other interest. And as the facts of this case clearly demonstrate, *see* Part III.B *infra,* the effect of such an error isn't necessarily too hard to measure and doesn't always result in fundamental unfairness. *See United States v. Jingles,* 702 F.3d 494, 502 (9th Cir. 2012) (a constructive amendment claim is, after *Cotton,* reviewable for plain error if not objected to at trial); *United Sates v. Brandao,* 539 F.3d 44, 58-59 (1st Cir. 2008) (noting the shift among the federal circuit courts away from regarding constructive amendment as structural error).

¶ 48 We therefore conclude that allowing a constructive amendment isn't structural error. We turn, then, to whether there

26

was a constructive amendment and, if so, whether allowing it was plain error.

¶ 49 Plain error is error that is obvious and that so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Hagos*, ¶ 14. The defendant has the burden of showing that any error was plain. *People v. Conyac*, 2014 COA 8M, ¶ 54; *People v. Boykins*, 140 P.3d 87, 95 (Colo. App. 2005).

## B. Analysis

¶ 50 Carter and the People agree that the district court allowed a constructive amendment of the complaint. Although we are not bound by the parties' concessions and must independently analyze this issue, we come to the same conclusion.

¶ 51 "A constructive amendment occurs when a court 'changes an essential element of the charged offense and thereby alters the substance of the charging instrument.'" *People v. Hoggard*, 2017 COA 88, ¶ 27 (quoting *Rodriguez*, 914 P.2d at 257),[8] *aff'd on other*

---

[8] Another kind of variance — a simple variance — occurs "when the elements of the charged crime remain unchanged, 'but the evidence presented at trial proves facts materially different from those alleged in the indictment.'" *People v. Vigil*, 2015 COA 88M, ¶ 30 (quoting

*grounds*, 2020 CO 54.  This violates a defendant's constitutional right to due process because it presents a risk that the defendant will be convicted of an offense or conduct that was not originally charged.  *See Deutsch*, ¶ 25; *Hoggard*, ¶ 27.

¶ 52    Even where the elements of the charged and instructed offenses are different, a constructive amendment has not occurred if the charged offense is a lesser included offense of the instructed offense.  *See Hoggard*, ¶ 33; *People v. Riley*, 2015 COA 152, ¶ 16.  This is because, despite the instructional error, the jury will necessarily have considered all the elements of the charged offense (as well as the additional elements of the instructed offense).  But that isn't what happened in this case.

¶ 53    The complaint and information charged Carter with violating section 42-4-1409(3) — failure to present proof of insurance.  As noted, the elements of this offense, as relevant in this case, are that (1) after an accident or request to do so following any lawful traffic contact with a peace officer; (2) an owner or operator of a motor

*People v. Pahl*, 169 P.3d 169, 177 (Colo. App. 2006)), *aff'd on other grounds*, 2016 CO 105.

vehicle; (3) fails to present evidence of motor vehicle insurance in full force and effect as required by law. *Id.*

¶ 54 The district court didn't instruct the jury on these elements. Instead, the court instructed the jury on the elements of operating a motor vehicle without insurance. *See* § 42-4-1409(2). As laid out in the jury instructions, the elements of this offense were that Carter "[1] operated a motor vehicle, [2] on a public highway of this state, [3] without a complying policy or certificate of self-insurance in full force and effect as required by law."

¶ 55 Thus, the elements of the charged and instructed offenses differed. To prove the charged offense (failure to present proof of insurance), the prosecution had to prove that Carter failed to present proof of insurance to the officer, regardless of whether his vehicle was insured. To prove the instructed offense, the prosecution had to prove that Carter's vehicle was *actually uninsured* when he drove it. These offenses prohibit different conduct — one prohibits failing to present proof of insurance and the other driving without insurance in the first place. *Cf. People v. Martinez,* 179 P.3d 23, 24-25 (Colo. App. 2007) (rejecting an argument that the offenses of failing to present proof of insurance

29

and driving without insurance must be interpreted together and instead holding that they are separate offenses with distinct elements).

¶ 56 Failure to present proof of insurance isn't a lesser included offense of operating a motor vehicle without insurance. It is true that a jury's determination that the defendant is guilty of operating a motor vehicle without insurance necessarily means that the defendant *could not have* presented evidence of insurance when the officer asked him for it. But it doesn't necessarily mean that the jury found that the defendant *did not actually* present evidence of insurance when asked. Put differently, a finding of guilt of operating a motor vehicle without insurance will not always support a finding of guilt for failing to present proof of insurance. An individual who is guilty of driving without insurance may not have committed the offense of failure to present proof of insurance if he was stopped by police and never asked to present proof of insurance. Practically, these circumstances may be unlikely to occur. Ordinarily, an officer will discover that a driver is uninsured by the driver failing to present proof of insurance when asked. But that point isn't relevant to our analysis (at this juncture). What

30

matters is that a jury's determination that a driver drove without insurance doesn't *necessarily* mean that the fact finder found that the driver also failed to present proof of insurance when asked.

¶ 57    So there was error and that error was obvious.[9]  But the error doesn't meet the third prong of the plain error test.  The jury found that Carter didn't have insurance for the vehicle.  And it necessarily so found based solely on the inference it could draw from Carter's failure to present proof of insurance (for which Carter was charged). An officer's body-camera video showed that she asked Carter for proof of insurance, but Carter didn't provide any.  These facts were uncontested, and no evidence was presented that didn't relate to the original charge.  Carter's only defense was that he wasn't the driver; the jury obviously rejected that defense.  Therefore, there is no reasonable possibility that the error was prejudicial.  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005) ("[A]n erroneous jury instruction does not normally constitute plain error where the issue

---

[9] "An error is obvious when it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law." *Thompson v. People*, 2020 CO 72, ¶ 54.  Colorado case law does not permit a constructive amendment absent the defendant's consent.

is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt.").

¶ 58    The fact remains that the jury found Carter guilty of operating a motor vehicle without insurance, not failure to present proof of insurance. The mittimus, however, shows a conviction for failure to present proof of insurance. It needs to be corrected.

## IV.  Conclusion

¶ 59    The conviction for felony DUI is reversed, the conviction for operating a motor vehicle without insurance is affirmed, and the case is remanded to the district court to correct the mittimus to reflect the conviction under section 42-4-1409(2) rather than section 42-4-1409(3)(a) and for further proceedings consistent with this opinion.

JUDGE BERGER concurs.

JUDGE J. JONES concurs dubitante.

JUDGE PAWAR concurs in part and dissents in part.

J. JONES, J., concurring dubitante.[1]

¶ 60     As to Carter's felony DUI conviction, *Linnebur v. People*, 2020 CO 79M, controls both the question of error and the requirement of reversal.  I write separately, however, because, in my view, the majority in *Linnebur* failed to account for United States Supreme Court and Colorado Supreme Court precedent in determining that the error of omitting the prior convictions element from the elemental instruction on the felony DUI offense requires reversal in all circumstances.  As I explain below, such an error isn't structural.  Therefore, it should be evaluated under the appropriate, outcome-determinative standard of reversal.

---

[1] "Dubitante" is a Latin word meaning "[d]oubting."  Black's Law Dictionary 631 (11th ed. 2019).  In a dubitante opinion, a judge may indicate doubt about the majority's rationale or result without dissenting from either.  Or, as is the case with this separate opinion, a judge may believe that a result is dictated by precedent but doubt that the precedent is correct.  *See, e.g., United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012) (Sutton, J., dubitante), *abrogated by Elonis v. United States*, 575 U.S. 723 (2015); *Majors v. Abell*, 361 F.3d 349, 355 (7th Cir. 2004) (Easterbrook, J., dubitante); *Sherman v. State*, 247 So. 3d 663, 664 (Fla. Dist. Ct. App. 2018) (Makar, J., concurring in result dubitante), *decision quashed*, Case No. SC18-949 (Fla. Apr. 16, 2019) (unpublished order); *see generally* Jason J. Czarnezki, *The Dubitante Opinion*, 39 Akron L. Rev. 1 (2006).

¶ 61    In *Linnebur*, the court held that the felony DUI and DWAI statutes' requirement that the defendant was previously convicted three or more times for DUI, DUI per se, or DWAI, *see* § 42-4-1301(1)(a), (b), C.R.S. 2020, is an element of the felony offense that must be found by a jury beyond a reasonable doubt.  In that case, the trial court found that fact.  Without analysis, the supreme court held that "[b]ecause Linnebur was sentenced for a crime different from the one on which the jury's verdict was based, his conviction of felony DUI and sentence must be reversed."  *Linnebur*, ¶ 32 (citing *Medina v. People*, 163 P.3d 1136, 1142-42 (Colo. 2007)).

¶ 62    With respect, I believe that the court's treatment of the error as one requiring reversal in all circumstances is contrary to United States Supreme Court and Colorado Supreme Court precedent.

¶ 63    In *People v. Novotny*, 2014 CO 18, the Colorado Supreme Court held that outside the limited class of those errors deemed "structural," there is no error, constitutional or otherwise, that requires reversal in all circumstances: "automatic" reversal outside of structural error is no longer countenanced by Colorado law, unless there is an "express legislative mandate" to that effect.  *Id.* at

¶ 27.[2] Rather, whether reversal is required for any nonstructural error depends on application of the "appropriate case specific, outcome-determinative analysis" — i.e., harmless error (ordinary or constitutional) or plain error. *Id.*; *accord People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 22; *Vigil v. People*, 2019 CO 105, ¶¶ 17-22.

¶ 64    So, unless the error in this case — the same error as in *Linnebur* — is structural, there should be no automatic reversal of the felony conviction and sentence: review in this case should be for plain error because Carter's attorney didn't object to the court finding the fact of three previous convictions. *See Hagos v. People*, 2012 CO 63, ¶ 14 ("[W]e review all other errors, constitutional and nonconstitutional, that were not preserved by objection for plain error.").

¶ 65    The error in this case — as *Linnebur* itself holds — was failing to submit an element of the felony offense to the jury. In *Neder v. United States*, 527 U.S. 1, 8-15 (1999), the United States Supreme

---

[2] The court's decision traces the development of harmless error since the Supreme Court's decision in *Chapman v. California*, 386 U.S. 18 (1967); under current law, constitutional errors are either trial errors, which may be harmless, or structural errors, which can't be. *People v. Novotny*, 2014 CO 18, ¶¶ 18-21, 26.

Court held that such an error is not structural. (Indeed, the Court said, "[t]he error at issue here — a jury instruction that omits an element of the offense — differs markedly from the constitutional violations we have found to defy harmless-error review." *Id.* at 8.) And in *Griego v. People*, 19 P.3d 1, 8 (Colo. 2001), the Colorado Supreme Court followed *Neder* and held that "when a trial court misinstructs the jury on an element of an offense, either by omitting or misdescribing that element, that error is subject to constitutional harmless error or plain error analysis and is not reviewable under structural error standards." As recently as 2011, the court said, "[i]t is now well-settled that error in the form of a misdescription or omission of an element of an offense does not, for that reason alone, constitute structural error." *Tumentsereg v. People*, 247 P.3d 1015, 1018 (Colo. 2011) (citing *Neder* and *Griego*).

¶ 66 *Neder* and *Griego* would seem to dictate the standard of reversal applicable in this case, and in *Linnebur*. Nonetheless, the majority in *Linnebur* treated the error of omitting an element as structural, without labeling it as such, and without acknowledging *Neder* or *Griego*.

¶ 67    In concluding that reversal was required without application of an appropriate, outcome-determinative standard, the majority cited *Medina*. But *Medina* is clearly distinguishable. In that case, the offense for which the court entered a judgment of conviction was never even charged. 163 P.3d at 1140-41 (distinguishing *Neder* and *Griego* on this basis). And no one — not the jury or the court — ever found the element in question. *Id.* at 1137; *see Lehnert v. People*, 244 P.3d 1180, 1186 n.7 (Colo. 2010) (limiting *Medina* to these facts). In fact, *Medina* expressly recognized the distinction between the error in that case and the error of misdescribing or omitting an element of an offense, distinguishing *Neder* and *Griego* on that basis. *Id.* In *Linnebur* (as in this case), however, the felony offense was charged, and the court found the element of prior convictions.

¶ 68    Nor is the error in this case (and in *Linnebur*) like the error in *Sullivan v. Louisiana*, 508 U.S. 275 (1993), on which the court relied in *Medina* to conclude that the failure of a charge or verdict (by any fact finder) constituted structural error. The error in *Sullivan* was in giving the jury an instruction defining reasonable doubt that was unconstitutional because it set the bar too low. *Id.* at 277. That

didn't happen in this case (or *Linnebur*).  As well, in *Neder*, the

Supreme Court expressly repudiated some of the Court's reasoning

in *Sullivan* — that "harmless-error analysis cannot be applied to a

constitutional error that precludes the jury from rendering a verdict

of guilty-beyond-a-reasonable-doubt" — saying, "it cannot be

squared with our harmless-error cases."  *Neder*, 527 U.S. at 11.

But that was the reasoning relied on by the court in *Medina,* and

therefore *Medina* rests, perhaps, on a foundation of sand.[3]

¶ 69     One other case — *Sanchez v. People*, 2014 CO 29 — merits

discussion.  In that case, the jury actually returned a verdict of *not*

guilty on a charge of sexual assault as part of a pattern of abuse,

but the jury indicated on a verdict form that the prosecution had

proved two of the six incidents of alleged abuse.  *Id.* at ¶¶ 7-8.  The

Colorado Supreme Court held that the instructions, including the

elemental instructions, special interrogatories, and verdict forms,

didn't clearly show that the jury had found that the defendant had

---

[3] This is not to say that I believe that *Medina* was necessarily wrongly decided as to the remedy applied (reversal for structural error).  It is to say that its rationale — ultimately applied by *Linnebur* to a different type of error — is arguably untenable under Supreme Court case law post-dating *Sullivan.*

38

engaged in a pattern of sexual abuse. *Id.* at ¶¶ 3-8, 12-13, 16-17. In other words, there was no clear guilty verdict. And the court held that this error was structural. *Id.* at ¶ 19.

¶ 70     This case obviously involves a different type of error than that in *Sanchez*. *See Rail v. People*, 2019 CO 99, ¶¶ 39-40 (discussing the factual limitations of *Sanchez*). But in any event, *Sanchez* relied on *Medina* and *Sullivan* in concluding that the error was structural. More specifically, it relied on that portion of the rationale in *Sullivan* that the Court later disavowed in *Neder*. Indeed, *Sanchez* didn't cite *Neder* or *Griego*, much less grapple with *Neder*'s rejection of a part of *Sullivan*'s rationale. *Sanchez*, too, therefore rests on shaky ground.

¶ 71     In sum, if I were writing on a clean slate, I would follow *Neder* and *Griego* and hold that the error in this case isn't structural. I would then assess whether the error was plain. But I'm not writing on a clean slate: as it now stands, *Linnebur* dictates reversal, even though, in my view, it conflicts with *Neder* and *Griego*. *See People v. Washington*, 2014 COA 41, ¶ 25 (where precedents conflict, the court of appeals must follow the supreme court's more recent

39

pronouncement).[4]  So I am left only to concur, while expressing the

hope that the Colorado Supreme Court will revisit its jurisprudence

on this point.

---

[4] *Neder* is not controlling on this issue because states are free to adopt standards of direct review for federal constitutional issues that are more stringent than those adopted by federal courts.  *See, e.g., Greene v. Georgia,* 519 U.S. 145 (1996) (per curiam).

JUDGE PAWAR, concurring in part and dissenting in part.

¶ 72    I disagree with the majority's constructive amendment analysis for three reasons. First, I believe it is improper for the majority to conclude that the constructive amendment issue was waived and then proceed to address the merits of that issue.

¶ 73    Second, I disagree with the majority's substantive waiver analysis — Carter did not waive his constructive amendment argument.

¶ 74    Third, although I agree with the majority that a constructive amendment occurred, I disagree with the majority's conclusion that constructive amendments are subject to any kind of harmless error review. I conclude that constructive amendments require automatic reversal. The majority may be correct that, under the peculiar facts of this case, the jury's finding of guilt on the constructively amended offense necessarily means it would have found Carter guilty of the charged offense. But when a defendant is convicted of an offense for which he was not charged, reversal is required.

I. The Majority's Alternative Analyses

¶ 75    Neither Carter nor the prosecution raised the prospect of waiver. Indeed, the prosecution argued on appeal that the

41

constructive amendment argument was unpreserved, not waived, under *People v. Rediger*, 2018 CO 32. The majority is correct that we are not bound by the parties' representations on these issues. We have an affirmative and independent obligation to determine whether a claim of error was preserved and what the proper standard of review is. But once we make that determination, we should abide by it.

¶ 76 "[W]aiver extinguishes error, and therefore appellate review." *Id.* at ¶ 40. The majority concludes that Carter waived his constructive amendment argument. The majority should stop there. After all, if the issue is waived, the error is "extinguishe[d]" and there is no error left to review. *See id.* But the majority does not stop there. Instead, immediately after concluding that the constructive amendment issue was waived, the majority addresses the merits of that issue.

¶ 77 Resolving issues on alternative grounds may be appropriate and even helpful in certain cases. This is not one of them. For the sake of clarity, the majority should choose one ground on which to resolve the constructive amendment issue. If it was waived, the error is extinguished and further appellate review is unnecessary.

42

If the issue was not waived, there is no point in saying anything about waiver — the parties did not raise it and it is completely irrelevant to resolving the appeal. *See In re Parental Responsibilities Concerning M.W.*, 2012 COA 162, ¶ 35 (declining to address argument that is unnecessary to resolve the appeal).

¶ 78    That said, because the majority concludes that Carter waived his constructive amendment argument, I next explain why I think he did not.

## II.  Carter Did Not Waive His Constructive Amendment Argument

¶ 79    Waiver is the intentional relinquishment of a known right. *Rediger*, ¶ 39.  We must "indulge every reasonable presumption against waiver." *Id.* (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)).  The majority does the opposite of indulging every reasonable presumption against waiver — instead, the majority's conclusion that Carter waived this issue is based on an unsupported inference.

¶ 80    Carter was charged with failure to present proof of insurance. But the jury was instructed on and found him guilty of operating a vehicle without insurance.  Waiver here required that defense counsel was not only aware of the discrepancy between the charged

offense and the constructively amended offense, but that defense counsel intended to waive Carter's right raise that discrepancy. *Id.* The record contains no such evidence.

¶ 81 The majority spends many paragraphs laying out facts that establish defense counsel knew that the jury was being instructed on the offense of operating a vehicle without insurance (the constructively amended offense). I agree that defense counsel knew that operating a vehicle without insurance was the offense submitted to the jury. But the majority cites no facts, and there are none in the record, indicating that defense counsel both realized that this was not the charged offense and intended to relinquish the right to instruct the jury on the charged offense. The majority infers that defense counsel must have realized this discrepancy merely because the discrepancy existed and the constructive amendment inured to Carter's benefit. Making this inference can hardly be said to be "indulg[ing] every reasonable presumption against waiver." *Id.* at ¶ 39 (quoting *Curtis*, 681 P.2d at 514). In my view, the equally if not more reasonable presumption under the facts of this case is that nobody — not the prosecutor, defense

counsel, or trial court — realized that the original charge had been changed.

¶ 82    In my view, this case is indistinguishable from *Rediger*. Defense counsel certainly had a chance to review the instructions and assented to instructing the jury on the constructively amended offense. But there is nothing in the record indicating that defense counsel understood that the instructions constituted a constructive amendment. The fact that the constructive amendment was hiding in plain sight is not enough to constitute a waiver under *Rediger*.

¶ 83    I would therefore conclude that Carter did not waive his constructive amendment argument. Accordingly, I proceed to explain why I disagree with the majority's constructive amendment analysis.

III. Constructive Amendments Are Reversible Per Se

¶ 84    I agree with the majority that the trial court erred by constructively amending the charged offense. But unlike the majority, I conclude that such an error is automatically reversible.

¶ 85    As the majority recognizes, numerous divisions of this court have concluded that constructive amendments are reversible per se. *E.g.*, *People v. Rail*, 2016 COA 24, ¶ 50, *aff'd on other grounds*, 2019

45

CO 99; *People v. Vigil*, 2015 COA 88M, ¶ 30, *aff'd*, 2019 CO 105. Yet the majority in this case comes to the opposite conclusion by reasoning that only structural errors are reversible per se, and constructive amendments are not structural errors. I disagree because I conclude that constructive amendments fit squarely in the category of structural error.

A. Our Supreme Court Has Not Addressed This Issue

¶ 86 The majority correctly notes that in *People v. Weinreich*, 119 P.3d 1073 (Colo. 2005), our supreme court held that a constructive amendment constituted plain error. But the *Weinreich* court did not frame the issue as whether a constructive amendment occurred. Instead, the court framed the issue as whether "the trial court committed plain and reversible error by failing to give an instruction that substantially conformed to the existing reckless child abuse resulting in death statute under which the prosecution charged Weinreich." *Id.* at 1076. Only in the summary paragraph of its analysis did the supreme court characterize the error, for the first and only time, as a constructive amendment. *Id.* at 1079.

¶ 87 By pointing this out, I do not mean to suggest that the supreme court did not review a constructive amendment for plain

46

error — it did.  But it is clear that the supreme court did not fully consider or analyze whether constructive amendments constitute structural errors.  Indeed, because the supreme court reversed under plain error, it was unnecessary to resolve that issue because the outcome would have been the same if the error was structural.

¶ 88    More recently, our supreme court demonstrated in *Rediger* that whether constructive amendments are structural errors is still an open question.  In that case, the supreme court framed the issue from the beginning as examining whether a constructive amendment required reversal.  *Rediger*, ¶ 32 ("Rediger next asserts that his conviction . . . resulted from an impermissible constructive amendment of the charging document.").  And in reviewing the constructive amendment for plain error, the court expressly avoided deciding whether constructive amendments constitute structural error, demonstrating that this was still an open question: "Because we conclude that the error was plain, we need not consider whether a constructive amendment amounts to structural error."  *Id.* at ¶ 47 n.4.  If, as the majority here holds, the supreme court's prior precedents dictated that constructive amendments are not

structural errors, the supreme court would have presumably said so in *Rediger*. It did not.

## B. Constructive Amendments Are Structural Errors

¶ 89    So, our supreme court has not ruled on whether constructive amendments are structural errors.[1]  The question then becomes whether constructive amendments are the type of error that should be classified as structural.  The majority says no.  I say yes.

¶ 90    The majority rightly states that structural errors are only those that "affect[] the framework within which the trial proceeds" and "defy analysis by 'harmless-error' standards."  *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991).  The majority then identifies three ways in which errors may defy harmless error analysis: (1) harm may be irrelevant to the basis underlying the right; (2) the effect of the harm may be too hard to measure; and (3) the error may always result in fundamental unfairness.  *See Weaver v. Massachusetts*, 582 U.S. ___, ___, 137 S. Ct. 1899, 1908 (2017).

---

[1] I take the majority's point that neither the United States Supreme Court nor our supreme court has included constructive amendments when listing examples of structural errors.  But neither has either court held that constructive amendments are not structural errors.

¶ 91 I agree with the majority that the first category does not apply to constructive amendments. But I disagree with the majority on the second and third categories.

1. Measuring the Harm of Constructive Amendments is Too Hard

¶ 92 When a constructive amendment occurs at trial, a verdict is rendered on elements that the defendant had no notice of until trial, and usually after the evidence is closed. This means that the defendant prepared for and defended himself at trial based on an incorrect understanding of what elements would be submitted to the jury. This makes it nearly impossible to measure the effect of the error. How can a reviewing court say that the evidence of a defendant's guilt was overwhelming when that evidence was introduced, admitted, and challenged before the defendant (or the prosecution and trial court, for that matter) knew what the elements of the offense were?

¶ 93 Any harmlessness analysis will turn on a reviewing court's evaluation of the strength of the admitted evidence. But the elements of the charged offense drive the presentation of evidence. If the elements change, what evidence is relevant and challenged will almost certainly change, too. This means that any

harmlessness analysis in a constructive amendment case will require a reviewing court to evaluate how strongly the evidence the parties introduced on the charged offense supports the jury's verdict on the different, constructively amended offense — it will be impossible for the reviewing court to know what evidence the parties might have introduced if the constructively amended offense had been charged in the first place. Without that information, I do not see how a reviewing court can properly determine whether the evidence of the defendant's guilt was so strong that the constructive amendment was harmless.

2. Constructive Amendments are Fundamentally Unfair

¶ 94    Furthermore, a constructive amendment always deprives the defendant of the fundamental constitutional right to notice of the charges against him. *See United States v. Miller*, 891 F.3d 1220, 1237 (10th Cir. 2018) (holding that "[t]he constructive amendment of an indictment violates [a defendant's] Sixth Amendment right to receive notice of [the] charges" against him, albeit while reviewing a constructive amendment argument for plain error); *People v. Melillo*, 25 P.3d 769, 790 (Colo. 2001) ("The right of an accused to notice of the charges which have been made against him constitutes a

50

fundamental constitutional guarantee and lies at the foundation of due process of law." (quoting *People v. Cooke*, 186 Colo. 44, 46, 525 P.2d 426, 428 (1974))).

¶ 95 The majority believes this does not matter here because, under the unique facts of this case, we can measure the harm, and the constructive amendment did not result in fundamental unfairness. But this ignores the fact that a constructive amendment *always* deprives a defendant of his fundamental constitutional right to notice of the charged offense. *See Miller*, 891 F.3d at 1237; *Melillo*, 25 P.3d at 790. I conclude that depriving a defendant of a fundamental constitutional right that "lies at the foundation of due process of law," *Melillo*, 25 P.3d at 790 (quoting *Cooke*, 186 Colo. at 46, 525 P.2d at 428), is always fundamentally unfair. I would therefore follow other divisions of this court and hold that a constructive amendment is reversible per se and reverse Carter's insurance conviction.

¶ 96 I concur in all other parts of the majority's opinion.