25CA1548 Peo in Interest of CR 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1548
Weld County District Court No. 23JV80
Honorable Allison J. Esser, Judge

The People of the State of Colorado,

Appellee,

In the Interest of C.R., a Child,

and Concerning R.R.,

Appellant.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE SCHUTZ
Freyre and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County
Attorney, Greeley, Colorado, for Appellee

Debra W. Dodd, Guardian Ad Litem

Michael Kovaka, Office of Respondent Parents' Counsel, Littleton, Colorado, for
Appellant

¶ 1     In this dependency and neglect proceeding, R.R. (father) appeals the juvenile court's judgment allocating parental responsibilities for C.R. (the child) to A.P-R. (mother).  We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services received a referral raising concerns that the child had been abused by father. When the intake caseworker met with the then-four-year-old child, he made "multiple disclosures" of physical and sexual abuse. Consequently, the Department filed a petition in dependency or neglect and asked the court to grant temporary custody to mother. The court granted the request, and the child remained in mother's care for the duration of the case.

¶ 3     Following father's no-fault admission, the juvenile court adjudicated the child dependent or neglected and adopted a treatment plan for father.  Among other things, father's treatment plan required him to (1) maintain contact with the caseworker; (2) learn parenting skills to establish healthy attachments with the child; (3) address his mental health issues; (4) complete a substance abuse evaluation and submit to urinalysis (UA) testing as requested by the Department; (5) maintain suitable housing for the

child; (6) demonstrate the financial ability to provide for the child's basic needs; and (7) exhibit the ability to coparent with mother.

¶ 4 Subsequently, the guardian ad litem (GAL) moved to allocate parental responsibilities to mother, and the Department joined in the request. Two years after the case began, the juvenile court granted mother primary residential custody of the child and found that it was in the child's best interests to have no family time with father until further order of the court. The court also allocated mother sole decision-making authority for the child. The court then certified the order into the parties' existing domestic relations case.

## II. Discussion

¶ 5 Father's sole contention on appeal is that, considering his treatment plan compliance, the juvenile court erred by allocating parental responsibilities solely to mother. We discern no error.

## A. Preservation

¶ 6 As an initial matter, father concedes that he did not preserve this issue and urges us to apply the miscarriage of justice exception to preservation. *See People in Interest of E.S.*, 2021 COA 79, ¶ 14. But the GAL contends that father sufficiently preserved his claim. "We have an independent, affirmative obligation to determine

2

whether a claim of error was preserved . . . notwithstanding the parties' respective positions or concessions . . . ." *People v. Carter*, 2021 COA 29, ¶ 13.

¶ 7     Prior to the final day of the hearing on the GAL's motion for an allocation of parental responsibilities (APR), father filed a proposed order requesting joint decision-making responsibility and family time on an increasing schedule.  During his closing argument, father's counsel referenced the proposed order and father's treatment plan progress before arguing that "there needs to be family time here and now or some very concrete plan for that to happen . . . in the near future."

¶ 8     We do not discern a meaningful distinction between father's argument to the juvenile court and his contention before us now. *See Brown v. Am. Standard Ins. Co. of Wis.*, 2019 COA 11, ¶ 21 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal."). We therefore conclude that the issue was sufficiently preserved and turn to the merits of father's contention.

B.     Applicable Law and Standard of Review

¶ 9     The Colorado Children's Code authorizes a juvenile court to enter an order allocating parental responsibilities and addressing parenting time when it maintains jurisdiction in a case involving a dependent or neglected child.  § 19-1-104(5)-(6), C.R.S. 2025.

¶ 10     When allocating parental responsibilities in a dependency and neglect proceeding, the court must consider the legislative purposes of the Children's Code under section 19-1-102, C.R.S. 2025.  *People in Interest of J.G.*, 2021 COA 47, ¶ 18.  The overriding purpose of the Children's Code is to protect a child's welfare and safety by providing procedures to serve the child's best interests.  *L.G. v. People*, 890 P.2d 647, 654 (Colo. 1995).  Therefore, if a court allocates parental responsibilities, it must do so in accordance with the child's best interests, focusing on the protection and safety of the child and not the parents' custodial interests.  *People in Interest of H.K.W.*, 2017 COA 70, ¶ 13.

¶ 11     The terms of an APR Order are within the sound discretion of the juvenile court.  *See In re Parental Responsibilities Concerning B.R.D.*, 2012 COA 63, ¶ 15.  The juvenile court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or

when it misapplies or misconstrues the law. *People in Interest of E.B.*, 2022 CO 55, ¶ 14. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence, and to assess the credibility of witnesses. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010). When there is record support for the court's findings, its resolution of conflicting evidence is binding on review. *B.R.D.*, ¶ 15.

### C. Analysis

¶ 12 In allocating parental responsibilities, the juvenile court found father unfit based primarily on his limited treatment plan progress. Specifically, the court focused on his lack of demonstrated sobriety and progress in reestablishing a relationship with the child. Finding that any family time with father would significantly impair the child's emotional development, the court ordered no family time for father until further order of the court. The juvenile court also found that joint decision-making responsibility was not in the child's best interests and, thus, awarded mother sole decision-making responsibilities.

¶ 13 The record supports the court's findings. The reunification therapist described the four steps of reunification therapy: (1) the

pre-clarification phase, in which the therapist meets separately with the parent and child to understand the issues and work on a clarification letter from the parent to the child; (2) the clarification phase, in which the parent and child meet to discuss the clarification letter; (3) family therapy; and (4) termination of therapy. In this case, father and the child could not move past the pre-clarification stage and, thus, did not have any sessions together. At times, father appeared to absorb information shared during his sessions, but he also had some unsuccessful sessions where he exhibited resistance to the process. The reunification therapist also explained that the child's mental health declined after she increased the frequency of his sessions.

¶ 14 Specifically, the child began exhibiting more aggression and themes of fear and abuse with his individual therapist following reunification sessions. He also exhibited symptoms of dysregulation — including struggling to listen to teachers and be productive in school, becoming aggressive with classmates and relatives, and demonstrating hypervigilance — which lasted up to two weeks after reunification sessions. The reunification therapist, who the court found credible, ultimately concluded that therapy

could not continue without harming the child and recommended ending the sessions. The caseworker expressed similar concerns about the child's dysregulation following reunification therapy and testified that the child's behavior improved after reunification therapy stopped.

¶ 15 The caseworker also described father's partial compliance with the substance abuse objective of his treatment plan. While father graduated from a thirty-day inpatient program shortly before the APR hearing, he also missed numerous UA tests throughout the case and most of his submitted tests were positive for alcohol. During his testimony, father acknowledged that he only took one UA in the two months since his release from inpatient treatment. And father did not enter a sober living facility after graduating from inpatient treatment, even though his case manager described that as a "super important" step. The reunification therapist believed that father's substance use impeded the reunification process, describing a few sessions where father appeared to be intoxicated. And ultimately, based on his observations of father's progress during the case, the caseworker opined that father was not a fit parent.

¶ 16    Even so, father asserts that based on his treatment plan compliance, such as maintaining contact with the caseworker, completing parenting classes and inpatient treatment, demonstrating a willingness to coparent, and having appropriate housing and financial means to care for the child, the juvenile court erred by not allocating any family time or decision-making responsibilities to him.  But this argument essentially asks us to reweigh the evidence, which we cannot do.  *People in Interest of K.L.W.*, 2021 COA 56, ¶ 62.  It is exclusively within the juvenile court's purview to resolve conflicting evidence.  *See B.R.D.*, ¶ 15; *see also A.J.L.*, 243 P.3d at 250 ("[I]t is important to defer to the [juvenile] court, particularly when it hears contradictory testimony on material issues . . . .").  And the juvenile court's weighing of the evidence, including father's partial treatment plan compliance, led it to explicitly conclude that contact with father would, at that time, be harmful to the child.

¶ 17    Moreover, the parents' treatment plan compliance is not determinative of how the court should allocate parental responsibilities.  *See People in Interest of L.B.*, 254 P.3d 1203, 1208 (Colo. App. 2011) (explaining that an APR must be determined in

8

accordance with the child's best interests and a finding of parental unfitness is not required before allocating parental responsibilities for a dependent or neglected child). Here, in entering its orders, the juvenile court focused on the child's best interests, giving paramount consideration to his physical, mental, and emotional needs and conditions. *See H.K.W.*, ¶ 13.

¶ 18 In sum, the record supports the juvenile court's findings, and its APR based on those findings was neither a misapplication of the law nor manifestly arbitrary, unreasonable, or unfair. Accordingly, we discern no error. *See E.B.*, ¶ 14; *B.R.D.*, ¶ 15.

### III. Disposition

¶ 19 The judgment is affirmed.

JUDGE FREYRE and JUDGE BROWN concur.